[Sac. No. 783.   Department One. — October 10, 1901.]

## CHARLES P. NATHAN, Appellant, v. GEORGE E. DIERSSEN, Respondent.

STATUTE OF FRAUDS — PAROL AGREEMENT TO TRANSFER LAND. — A parol agreement to transfer, without consideration, a strip of land which is part of a well-defined tract abutting upon a well-recognized boundary between adjoining tracts, as to which there is no dispute or uncertainty, is ineffective, as being in direct violation of the statute of frauds.

ID. — ERECTION OF DIVISION FENCE — UNAUTHORIZED ACT OF TENANT — FINDING AGAINST EVIDENCE. — The erection of a division fence between the two tracts, so as to include the strip as part of the defendant's land, by a tenant of the plaintiff who is a successor in interest of the tract from which the strip was granted by parol, cannot bind or estop the plaintiff, where it appears that the tenant had no authority to adjust the boundary. A finding that the plaintiff, with knowledge of the original agreement, erected a division fence upon the line originally agreed to by parol, is held to be against the evidence.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial.   E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

Isaac Joseph, and D. E. Alexander, for Appellant.

A. L. Shinn, and Albert M. Johnson, for Respondent.

VAN DYKE, J. — Action to quiet title.

A tract of land on the west side of the Sacramento River, in Yolo County, including the premises in controversy, up to the third day of February, 1889, belonged to one Herman Huber, at which time the said Huber died.   It was proven on the trial that Augusta J. Huber was the widow of said Huber, deceased, and Herman L. Huber, their son, and that said Augusta and Herman L. were the devisees of said Herman Huber, deceased, under his last will and testament; that said will and testament had been admitted to probate in the superior court of Sacramento County; that said devisees and successors in interest of said Huber, deceased, prior to the distribution of the estate of said Herman Huber, deceased, mutually agreed to a partition

of the real property of the deceased, and executed to each other partition deeds of said property; that in said partition deeds there was assigned and granted to said Augusta J. Huber (afterwards Huggins), the northern part of said tract of land, containing 156.16 acres, describing the same by metes and bounds, and assigned and granted to said Herman L. Huber the southern portion of said tract, consisting of 155.16 acres, more or less, also described by metes and bounds; that said partition deeds were duly executed and acknowledged by the respective grantors thereof; that on July 29, 1892, a decree of distribution in said estate was made and entered, whereby the said body of land was distributed to and partitioned between said devisees, according to the partition theretofore made under the deeds executed by the respective parties as aforesaid,—that is to say, to Augusta J. Huggins (formerly Huber), the northern portion of said tract of land, and to Herman L. Huber, the southern portion of said tract; that the land described in plaintiff's complaint is embraced within the description of, and comprises the southern portion of, the land thus distributed to Augusta J. Huggins (formerly Huber), and joins the land distributed to Herman L. Huber.   The plaintiff, by foreclosure proceedings and mesne conveyances, derives title from the said Augusta J. Huggins (formerly Huber).   Upon the trial, the defendant offered in evidence a deed dated October, 1894, from Herman L. Huber and his wife to G. C. Simmons, conveying to said Simmons the property set apart and distributed to said Herman by the decree of distribution, and also offered in evidence a deed from said Simmons and wife, dated October 9, 1896, to defendant George E. Dierssen, conveying to him the same premises, and by the same description.   To the introduction of these deeds the plaintiff objected, on the ground, among others, that the deeds did not describe the lands in controversy, which objection was overruled and the deeds admitted in evidence, and the plaintiff excepted.   Against the objection of the plaintiff, the court allowed the following question to be asked of defendant's witness, Herman L. Huber: "Q. After the decree of distribution, did you and your mother make any agreement with reference to the line between the two tracts?"   And he answered, "We did."   Also, the following question, over the objection of the plaintiff: "Q. State what the agreement was, and what, if anything, was done with reference to making or fixing the division line."   The witness answered in reference

to the line referred to in the partition and decree of distribution: "It come so they took the barn, but I was to have the house, leaving the line come a little south of the barn, so that it would give me plenty of room for my house and buildings. There was a survey made by a man by the name of Donaldson. He set the stake for the division line — he set the stake, as near as I can remember, so it gave me just that much more land in the front there for the house and building." Continuing, he says, in answer to the question, What was done in reference to the line? — "Mr. Scribner, who was Mr. Nathan's tenant, asked me if I knew where the line was, and I showed him the stakes and told him he could build the fence by the stakes. . . . Mr. Scribner did not know where the line was, and I told him as near as I could. I did not pay my mother, Mrs. Huggins, anything for the extra strip of land between the line established by partition deeds and decree of distribution and the line where this fence now stands."

Over plaintiff's objection, the court also permitted the following question to be asked of the witness Henry T. Huggins, who had married Mrs. Augusta J. Huber: "Q. State what agreement was made between Herman Louis Huber and his mother with reference to a division line between the two tracts awarded to them by the decree of distribution in the estate of Herman Huber, deceased, if you know." The witness answered, " The agreement was made that they should divide the land on the river front so as to throw the buildings on Herman Louis Huber's part of the place; a line was made by them on the river front, representing a division between their lands; this was done in the month of September, 1892."

In the brief of respondent's attorney it is admitted, "there was no dispute or uncertainty as to where the true line was. All parties knew where it was, but they deliberately disregarded the true line, and made one to suit themselves." The defendant does not rely upon adverse possession or the statute of limitations, but upon the establishment of a boundary line by parol. This, however, is not such a case, but an attempt to convey by parol, and without consideration, a strip of land belonging to one of the tracts abutting upon a well-recognized boundary line. This is squarely in the teeth of the statute of frauds. (Civ. Code, sec. 1091.) In support of his position in reference to establishing a boundary line by parol, respondent cites and relies upon *Cavanaugh* v. *Jackson*, 91 Cal. 580. In

that case, however, as stated by the court, "a dispute having arisen as to the boundary line between the two ranches, a surveyor was employed by plaintiff and defendant to make a survey and establish the true line. The line in that case was established in 1881, and the defendant occupied and used it exclusively up to the commencement of his action, which was in April, 1887, and the plaintiff never exercised any acts of ownership over it during that period." And the court say, "This long-continued acquiescence in the line previously established, we think, is a ratification of the agreement made in 1881." *Sneed* v. *Osborn*, 25 Cal. 630, is also relied upon by respondent. The *syllabus* in that case says: "If the description in a deed is uncertain, the grantor and grantee may agree upon and establish the boundary line between the land granted and the remaining lands of the grantor, and such agreement will be binding upon the parties." *Moyle* v. *Connolly*, 50 Cal. 295, is another case relied upon by respondent. There, the agreement fixing the boundary line was in writing, and the court say, "We are of opinion that the written agreement made by Wells and Connolly on the second day of April, 1863, established the line between the parties here." *Tuffree* v. *Polhemus*, 108 Cal. 670, is also cited. In that case the court say, "The findings of fact establish an executed parol partition,"—which is not this case, but an attempt to transfer by parol what is an admitted strip of land on one side of a recognized boundary line, to the owner of the land on the other side of said line. None of the cases relied upon by respondent support his contention.

It is certified in the bill of exceptions, "This is all the evidence." There is not a particle of evidence in the bill of exceptions to show that plaintiff ever authorized his tenant Scribner to adjust a disputed boundary line, much less to attempt a transfer of a strip of his land to Huber, the owner of the adjoining tract. Nor is there any evidence to show that he knew that the fence which had been erected by his tenant was not upon the true line, until some time thereafter. Scribner testifies: "In March, 1895, I occupied the land of C. B. Nathan, formerly belonging to the estate of Huber, deceased, as Mr. Nathan's tenant. I know the defendant Dierssen. The place Dierssen owns was, in 1895, owned by Herman Louis Huber. I became Mr. Nathan's tenant in February, 1895. I remember when the fence spoken of by other witnesses was erected.

When I leased the place from Mr. Nathan, or shortly thereafter, I wanted to use a portion of the ranch for pasture, and there was no division fence between the ranches. I sent word to Mr. Nathan that it would be necessary to have a fence there, and that I would like to know something about where I should put the fence. There was nothing—no place established—no line established, where to put the fence; he sent me word to find the line the best I could, and put the fence up. I went to Herman Louis Huber, and asked him if he knew where the line was. He told me he did"; and the witness states that he pointed out to him the line, which is the one that had been agreed upon between himself and his mother, already referred to. Defendant testifies: "The first objection made by plaintiff to me about the division line was about the middle of the summer of 1898; at that time he sent some men down to move the fence. They started in to take the present fence down, and I had them arrested. They began to dig holes to put the fence on the line according to survey taking in my house,—the house in which Herman Huber formerly lived. I stopped them by having them arrested, and threatened to have them arrested again if they attempted to put the fence on the line that is claimed to be the true line by Mr. Nathan." Yet the court finds that at the time the mortgage was executed (through the foreclosure proceedings of which plaintiff deraigns title), and at all times thereafter, plaintiff had full notice and knowledge of said agreement fixing said boundary line, and that he and said Herman L. Huber erected a division fence between said tracts, according to said line.

The judgment and order denying a new trial are reversed and the cause remanded.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.