[Sac. No. 2569.    Department One.—July 3, 1918.]

## MANUEL I. SILVA et al., Respondents, v. JOSEPH V. AZEVEDO et al., Appellants.

BOUNDARIES—LOCATION BY ADJOINING LAND OWNERS—LONG-CONTINUED ACQUIESCENCE — GENERAL RULE.—Where adjoining land owners, being uncertain of the position of the true boundary described in their deeds, agree upon a location as the true location, mark it upon the ground, or build up to it, occupy on each side up to the place fixed, and acquiesce in the location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change in its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.

ID.—EJECTMENT—FINDINGS UNSUPPORTED BY EVIDENCE.—Where, in an action of ejectment to recover a disputed strip of land lying between two adjoining holdings, it appeared that a somewhat irregular shaped tract of land had been acquired by the predecessor of the plaintiff, with the understanding that it should be divided equally between himself and the defendant, that accordingly a deed was made to the defendant describing the west half by metes and bounds furnished by a surveyor employed to make a survey for the two owners, but by mistake the surveyor established a line of stakes, not conforming to the description but too far to the east, throwing the disputed strip into the westerly holding, and that along this line a substantial fence was built at joint expense by the two owners, who for about six years occupied and cultivated the respective holdings up to the line of the fence, findings that there had been no uncertainty as to the location of the boundary and no agreement between the parties that the fence line should be taken to be the true boundary were not supported by the evidence.

ID.—MUTUAL MISTAKE—APPLICATION OF "AGREED BOUNDARY" RULE.— The fact that both adjoining owners were mistaken in believing

: that a boundary line fixed between their holdings, by mutual assent, was the true line does not prevent the application of the "agreed boundary" rule.

ID.—AGREED BOUNDARY AS AN ATTEMPT TO TRANSFER LAND.—Adjoining owners cannot by mere agreement establish a boundary line which they know is not the true boundary, the attempt to so fix the line being merely an endeavor to transfer land from one to the other, which can be accomplished only by a conveyance.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

S. Luke Howe, and Downey, Pullen & Downey, for Appellants.

Driver & Driver, B. F. Van Dyke, and Frank Tade, for Respondents.

SLOSS, J.—Ejectment to recover a strip of land containing about six and one-half acres. Judgment went for plaintiffs, and the defendants appeal.

The plaintiffs are the successors in interest of Manuel Silva. The defendants are husband and wife. For purposes of statement and discussion, we may treat the case as if Manuel Silva were the plaintiff and Joseph V. Azevedo the sole defendant.

In 1908, Azevedo purchased a tract of farming land, containing something over 126 acres, in Sacramento. The parcel was quadrilateral, its easterly and westerly lines being parallel, the southerly line meeting these at right angles, and the northerly line running diagonally from northeast to southwest. Roughly speaking, the length of the parcel, from north to south, was about three times its width, from east to west. Prior to the purchase of the tract there had been an understanding that the land was to be divided equally between Silva and Azevedo. Accordingly, Azevedo conveyed to Silva the east half of his holding, the land granted being described in the deed by metes and bounds. A fence was built, dividing the entire tract into two parcels, and each proceeded to occupy, improve, and farm the land on his side of the fence. After some six years, Silva discovered that the

fence had been placed about seventy feet too far east, and that a part of the land described in his deed, comprising the strip in controversy, was in Azevedo's possession. The present action resulted.

Azevedo's defense was based, principally, upon the claim that the fence line had been agreed upon as the boundary between the two parcels, and that such agreement was binding upon the parties. The rule invoked is a familiar one. An early case applying it, and one that has frequently been cited in this court, is *Sneed* v. *Osborn,* 25 Cal. 619. The scope and effect of the doctrine are thus defined in *Young* v. *Blakeman,* 153 Cal. 477, [95 Pac. 888] : ''When such [adjoining] owners, being uncertain of the true position of the boundary so [in their deeds] described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.'' In the present case, the court found that there was no uncertainty as to the location of the boundary line, and no agreement between the parties that the fence line should be taken to be the true boundary. We think, however, that these findings, if not at variance with the more specific facts found, are without support in the evidence. It is found (and the evidence shows without conflict) that before the execution of the deed from Azevedo to Silva the entire tract theretofore acquired by Azevedo had not been divided, nor had the boundary line between the east and west halves thereof been marked upon the ground; that Azevedo and Silva, acting jointly, engaged a surveyor to survey the tract, to divide the same into east and west halves, to furnish a particular description by metes and bounds of the east half for use in the deed to be executed, and to locate upon the ground, by means of stakes, the division line between the east and west halves. The surveyor made the survey and furnished the description, which was carried into the deed, and correctly described, by metes and bounds, the east half of the tract. He also established a line of stakes upon the ground, but by mistake located these stakes too far to the east, thus

throwing the disputed strip into the westerly subdivision of the tract. Neither Silva nor Azevedo knew of said mistake. The two joined in building a substantial fence on the line marked by the stakes, believing such line to be the true line called for by the deed. Azevedo has ever since been in possession of the land lying to the west of the fence, and has made valuable and permanent improvements on the strip in controversy, relying upon "the mutual mistaken belief of all parties" that the fence was located upon the true division line. It appears, further, that one-half of the surveyor's charge was paid by each of the parties, and that each contributed one-half of the money and the labor expended in the building of the fence.

On this state of facts, we think there was no room for any other inference than that the line indicated by the surveyor as the dividing line between the two holdings, and followed by the erection of a fence by the two parties, was agreed on by them as the true boundary. It is argued that the "agreed boundary" rule applies only where there is an uncertainty regarding the position of the boundary, and that in this case there was no such uncertainty, since the true location of the line could always have been determined by a correct measurement. But this condition exists in virtually every case in which the aid of the rule is sought. There is no occasion for asserting that a boundary has been established by agreement, unless the description in the conveyance in reality designates a different boundary. "It is only where the true location is subsequently ascertained that actions of this kind arise." (*Price* v. *De Reyes,* 161 Cal. 484, 489, [119 Pac. 893].) That Silva and Azevedo were, in fact, in doubt as to the place where the dividing line should run is apparent from the circumstances, and from their conduct. To properly locate, on the ground, the boundaries of a tract of somewhat irregular shape and containing fifty-six acres is a task calling for knowledge and skill of a more or less expert character. That the parties thought they needed the assistance of someone possessing the requisite ability is conclusively shown by their employment of a surveyor to locate and mark the division line between the two halves of the larger tract. The only purpose they could have had in so doing was to fix definitely, by proper measurement and marking, the boundary, which, until it was so ascertained and marked, must have remained

uncertain in their minds. When, then, acting upon the information so given them, they joined in the construction of a substantial fence on the line, and proceeded, respectively, to improve and cultivate up to the fence, the only theory upon which their acts can reasonably be explained is that they had agreed upon the fence line as the true location of the west boundary of the land conveyed to Silva. It is true that both were mistaken in believing that the line so fixed was the true line. But this does not prevent the application of the rule. (*Sneed* v. *Osborn,* 25 Cal. 619; *Biggins* v. *Champlin,* 59 Cal. 113.)

It is true, as has repeatedly been held, that adjoining owners cannot, by their mere agreement, establish a boundary other than the true one, where they know that the line attempted to be fixed is not, in fact, the true boundary. (*Nathan* v. *Dierssen,* 134 Cal. 282, [66 Pac. 485]; *Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60]; *Mann* v. *Mann,* 152 Cal. 23, [91 Pac. 994].) In such cases the parties are merely endeavoring to transfer land from one to the other, an object that can be accomplished only by means of a conveyance. No such situation is presented here. Nor is the case parallel to *Clapp* v. *Churchill,* 164 Cal. 741, [130 Pac. 1061], where it was held that the doctrine of an agreed boundary line could not apply where one of the coterminous owners believed that a certain line marked the boundary, but there was no evidence of any such belief on the part of the other. In this case it is apparent that both Silva and Azevedo, thinking that the line fixed by the surveyor was the true boundary described in the deed, accepted such line as the division between their holdings, built a fence upon it, and occupied and improved up to the fence. We have here not only a continued acquiescence in the line so fixed, and an occupation in accordance with it for a period beyond that fixed by the statute of limitations, but the erection of substantial and permanent improvements upon the disputed piece by the defendant. It would be a manifest injustice to permit him to be ousted now merely because the plaintiffs have, by a new survey, discovered that their predecessor and the defendant were in error in the original establishment of the line. "If the position of the line always remained to be ascertained by measurement alone, the result would be that it would not be a fixed boundary, but

would be subject to change with every new measurement. Such uncertainty and instability in the title to land would be intolerable." (*Young* v. *Blakeman,* 153 Cal. 477, [95 Pac. 888].)

The judgment is reversed.

Shaw, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.