[Sac. No. 5730. In Bank. July 23, 1946.]

JOHN C. MARTIN et al., Respondents, v. JOE R. LOPES et al., Appellants.

Gilbert Moody for Appellants.

Preston, Braucht & George and H. C. George for Respondents.

SHENK, J.—The defendants appeal from a judgment for the plaintiffs in an action to quiet title. The controversy involves the location of the north-south and east-west boundaries between their respective lands.

In February, 1924, Frank C. Martin and John C. Martin, brothers, purchased and became tenants in common of land in Merced County described as the East half of the Southeast quarter of Section 28, Township 5 South, Range 11 East, M. D. B. & M. In 1932 they decided to partition the land equally between them. They engaged a surveyor and instructed him to divide the tract so that each would share in a hilly portion in the northwest and in the level areas. The brothers assisted in the survey and set the stakes as directed by the surveyor. Accordingly an approximate rectangular area was laid out for Frank in the southwest portion of the tract, and John was allotted the remainder lying to the north and east. Each brother received and recorded a deed containing a description of 40.3 acres, more or less. They shared the labor and expense of constructing a fence along the east-west and north-south division lines indicated by the stakes and after 1932 each occupied the land set apart to him up to the fence lines as so constructed. The evidence is that they believed that the fences were built on the lines as called for by the deeds, and that they accepted the fence lines as the boundaries described in the deeds.

In June, 1941, Frank conveyed his 40-acre tract to Joe R. Lopes and Mary M. Lopes, his son-in-law and daughter, the defendants herein. In 1943 Lopes caused a survey to be made by County Surveyor Bedesen. This later survey purported to show that the fences were not constructed in accordance with the measurements stated in the deeds. It revealed that the east-west fence line built by the parties was apparently about twenty feet north of the line called for by the deed; and that the north-south fence line built by them was westerly by about eleven feet at the south boundary, converging to about a foot from the northerly end of the line called for by the deeds. Thus, there is supposedly enclosed within the Lopes land a portion at the northerly end thereof intended for John Martin, and within the latter's land along the north-south line between them a portion which should have gone to Frank. According to the Bedesen survey the net result is the gain to the plaintiffs of .11 of an acre, and a loss to the defendants of .02 of an acre, over the quantity stated in the deeds; or to John .13 of an acre more than to Frank, each still receiving slightly more than forty acres.

The respective net gain and loss figures are taken from the Bedesen survey which was based on monuments located by Bedesen. The monuments on the westerly boundary and the line drawn by Bedesen as the true westerly boundary line of the 80-acre tract lie easterly of an existing fence line. At the south boundary the fence line runs 3 feet westerly from the point selected by Bedesen as the southwest corner of the 80-acre tract; and its northerly continuation is increasingly away from the westerly boundary line found by Bedesen until at the east-west fence line built by the Martins the distance is 21.5 feet, and at the northerly line of the plaintiffs' (John Martin's) land the distance is 23.76 feet. Nevertheless, these graduated distances between the Bedesen survey line and the existing westerly fence line were claimed by both parties, and the claims were asserted in this action although adjoining landowners were not joined as defendants. However, since the court's judgment quieting title in the plaintiffs in accordance with their claim expressly and in law binds only the parties to the action, this discrepancy is immaterial except as hereinafter noted. ▮ Furthermore, adjoining owners are not affected by agreements respecting property lines to which they are not parties. (*Sneed* v. *Osborn*, 25 Cal. 619, 625.) The discrepancy dem-

onstrates the fact that without including the westerly strip between the fence line and the true westerly boundary as found by Bedesen, each party still is in actual possession of more than the 40 acres intended by the voluntary partition.

The only testimony regarding the ascertainment of the boundaries by the calls and measurements contained in the deeds was given by the plaintiffs' witness, County Surveyor Bedesen. He testified that not only the fence lines between the Lopes and Martin properties, but also other fence lines in that region (notably the fence line along the westerly boundary of the Lopes and Martin tract) were out of line according to the actual corner monuments which he used in making his survey; that by using such corner monuments, the fences on the north and "especially" the fence on the west would be off the lines; that he discovered that the west fence line was not on the true legal subdivision line when he made a survey at the request of the adjoining owner, Rapp; and when that discovery was made Mr. Lopes asked him to make a survey and diagram showing how the fences on their property corresponded with the metes and bounds descriptions in the parties' deeds. He found the southeast corner, but established the southwest corner of the 80-acre tract by dividing the distance between the quarter section corners. He found an established quarter section corner at the northeast corner of the 80-acre tract which was distant 2,658.66 feet measured between the southeast and the northeast corners. He discovered that the fence along the northerly boundary line of the 80-acre tract was south of the section line. Neither party complains that by the judgment the plaintiffs' (John C. Martin's) land is decreed to extend to the north section line (as claimed), although the fence line is south thereof and the deed calls for a less distance by 18.66 feet. Mr. Bedesen expressed the opinion that all the existing fence lines would have to be shifted in order to enclose the several properties in that region according to existing monuments or the calls in the deeds. The parties adopted descriptions in their deeds which called for easterly and westerly boundary lines of the 80-acre tract of equal distance when, according to the Bedesen survey, such lines were not equal in distance, and both distances as measured were greater than the equal distance called for by the deed. Mr. Bedesen said: "Well, those descriptions in the deed are so very bad no one could survey them on the ground. What they pur-

ported to do was to describe the east half of the southeast quarter of section 28, but they did it in the office, I presume, and assumed that the quarter section was a half mile north and south, which it wasn't, and they assumed that east and west the property went to the north fence and they got the distance of 1349 feet instead of about 1322 feet; so the description went outside of the land they owned.''

The plaintiffs sought to quiet title in accordance with the east-west and north-south fence lines dividing the parties' properties. The defendants by cross-complaint alleged the partition boundary line in accordance with the calls in the deeds.

The trial court found that the brothers agreed ·to divide the property between them; that in order to give effect to their agreement and ''being uncertain as to·the line between their agreed parcels,'' they jointly employed a surveyor and assisted him in locating the line; that they jointly constructed a fence along the line so located; that the fence was agreed by them to be the boundary line and was accepted and treated as the boundary line between their properties; that the agreement occurred about the year 1932, and that the plaintiffs have been in possession and paid taxes accordingly ever since.

The case of *Sneed* v. *Osborn, supra* (25 Cal. 619, 627), laid down the rule in this state in accordance with what was said to be abundantly supported by the authorities, that when owners of adjoining lands have acquiesced for a considerable time, at least equal to the period prescribed by the statute of limitations, in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line. In that case boundary lines were drawn by the parties in accordance with stakes set by them at the direction of a surveyor. It appeared that the position of the initial point called for by the deed was uncertain. The court observed that probably no two men would take the deed, and going upon the land separately, would·fix upon the same place for the starting point. Relying on that case and others the court in *Biggins* v. *Champlin,* 59 Cal. 113, 116, said that it made no difference that the parties, in making the location, acted under a mistake as to the true line. In *Helm* v. *Wilson,* 76 Cal. 476, 485 [18 P. 604], the theory that there must have been a dispute as to the true line was rejected as a false quantity.

In *Young* v. *Blakeman*, 153 Cal. 477 [95 P. 888], the plaintiff sought to recover a strip 9⅜ inches wide at Geary Street, running through to a width of 13⅜ inches at what was then Morton Street (now Maiden Lane), between Dupont (Grant Ave.) and Kearny Streets in San Francisco. A judgment for the defendant was affirmed. The court observed that experience showed that measurements, made at different times by different persons with different instruments, would usually vary somewhat; also that if the position of the line always remained to be ascertained by measurement alone, the result would be that it would not be a fixed boundary, but would be subject to change with every new measurement. It was said at pages 481-482: "Such uncertainty and instability in the title to land would be intolerable. For these and other reasons the rule has been established that when such owners, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements. . . . The object of the rule is to secure repose, to prevent strife and disputes concerning boundaries, and make titles permanent and stable. . . . If a measurement is made and the line agreed on and acquiesced in as required by this rule, it is binding on and applicable to all parties to the agreement and their successors by subsequent deeds. It is stated by the authorities that the line so agreed on becomes in legal effect the true line, that the agreement as to the line may be in parol and that it does not operate to convey title to the land which may lie between the agreed line and the true line, but that it fixes the line itself and the description carries title up to the agreed line, regardless of its accuracy; that the agreement as to the line is not in violation of the statute of frauds, because it does not transfer title; that the parties hold up to the agreed line by virtue of their original deeds and not by virtue of the parol agreement; that 'the division line when thus established, attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed,'

and that if more is thus given to one than the calls of his deed actually requires, he 'holds the excess by the same tenure that he holds the main body of his lands.' '' (Citing *Sneed* v. *Osborn,* and other cases.)

The rule was followed in *Loustalot* v. *McKeel,* 157 Cal. 634 [108 P. 707], where the court stated at pages 642-643: ''When they entered into the agreement both had equal knowledge of the facts and no deception or fraud was practiced. Under these circumstances it is entirely immaterial whether the parties were right or wrong in believing that the true line was exactly where it should be as they established it. They were certainly in doubt as to where it should run. . . . Courts have always looked with favor on the settlement of questions of this character by the parties in interest themselves, and when it appears that an agreement adjusting a disputed boundary line has been fairly and definitely made between them, and they have occupied their lands accordingly for a period longer than the statutory period of limitation, such agreement is conclusive no matter whether they were mistaken or not in their belief that they were locating it along the true line. It is quite obvious that if the fact merely that the parties were mistaken as to where the true line lay could invalidate their agreement, there never could be any stability attached to such an agreement unless the line agreed on was in truth the exact line. The policy of the law, however, is to give stability to such an agreement as a method adopted in good faith by the parties themselves to settle the controversy, and because it is the most satisfactory way whereby a true boundary line may be determined, and tends to prevent litigation.''

Many other cases are to the same effect, some of which may be cited: (*Thaxter* v. *Inglis,* 121 Cal. 593 [54 P. 86]; *Dierssen* v. *Nelson,* 138 Cal. 394 [71 P. 456]; *Price* v. *De Reyes,* 161 Cal. 484 [119 P. 893]; *Schwab* v. *Donovan,* 165 Cal. 360 [132 P. 447]; *Silva* v. *Azevedo,* 178 Cal. 495 [173 P. 929]; *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15 [200 P. 651]; *Muchenberger* v. *City of Santa Monica,* 206 Cal. 635, 642 [275 P. 803]; *Vowinckel* v. *N. Clark & Sons,* 217 Cal. 258 [18 P.2d 58]; *Moniz* v. *Peterman,* 220 Cal. 429 [31 P.2d 353]; *Park* v. *Powers,* 2 Cal.2d 590 [42 P.2d 75]; *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572]; *Perich* v. *Maurer,* 29 Cal.App. 293 [155 P. 471]; *Wagner* v. *Meinzer,* 38 Cal. App. 670 [177 P. 293]; *Howatt* v. *Humbolt Milling Co.,* 61

Cal.App. 333 [214 P. 1009]; *Raney* v. *Merritt,* 73 Cal.App. 244 [238 P. 767]; *Todd* v. *Wallace,* 25 Cal.App.2d 459 [77 P.2d 877]; *Schneider* v. *Pascoe,* 47 Cal.App.2d 709 [118 P.2d 860]; see, also, 4 Cal.Jur. 432 et seq. and cases cited; cases collected in note, 69 A.L.R. 1430; Thompson on Real Property (perm. ed.), vol. 6, pp. 482 et seq.)

Whether the period of acquiescence may be shortened by the construction of valuable improvements on the theory of estoppel or otherwise, or whether an agreement may be implied from long acquiescence, are not questions involved in this case. Nor is it necessary to detail the elements of adverse possession which may or may not be involved. ▮ As hereinabove shown the rule applies when the requisite uncertainty, the agreement and the prescribed acquiescence are present, the only other requirement being that proof of the agreed location must be clear. (*Grants Pass Land & Water Co.* v. *Brown,* 168 Cal. 456, 459 [143 P. 754].) ▮ Clarity of proof of an agreed location is present by virtue of the undisputed lack of knowledge of the location of the boundary to be drawn between the parcels, the owners' joint endeavors in locating the line, their agreement to accept a jointly constructed fence thereon as the boundary, and mutual acquiescence therein for a period in excess of the statutory limitation. Those facts without more call for the application of the rule settled by the foregoing authorities.

The defendants contend that the evidence does not support the finding of uncertainty. They assert that it was the intention of the parties to set the boundary along the true line called for by their deeds, that their failure to do so was merely the result of mistake, and that the application of the rule in such a case permits a conveyance of land in a mode not countenanced by law, namely, by a parol agreement which is contrary to the statute of frauds. Reliance is placed on *Clapp* v. *Churchill,* 164 Cal. 741 [130 P. 1061], and similar cases.

In *Clapp* v. *Churchill* there was merely an assumption on the part of the plaintiffs when they purchased the property that an existing pomegranate hedge marked the southern boundary of their land. There was no agreement and no attempt to ascertain the true boundary from the deed which presented no uncertainty on its face. Manifestly, the elements of agreed boundary, or practical location, as it is sometimes designated, were not present. In stating the elements

of an agreed boundary the court said (at page 745). that an "agreement to fix a boundary line is not valid, indeed is void, if the parties know, or one of them knows, that the agreed line is not the true line, or, in other words, if there be not an actual or believed uncertainty as to the true line." Like-wise, in other cases it was held that at least one of the re-quirements to evidence an agreed boundary was missing. (See *Nathan* v. *Dierssen,* 134 Cal. 282 [66 P. 485]; *Grants Pass Land & Water Co.* v. *Brown, supra,* 168 Cal. 456; *Fried-man* v. *Southern Cal. T. Co.,* 179 Cal. 266 [176 P. 442]; *Hud-dart* v. *McGirk,* 186 Cal. 386 [199 P. 494]; *Dauberman* v. *Grant,* 198 Cal. 586 [246 P. 319, 48 A.L.R. 1244]; *Janke* v. *McMahon,* 21 Cal.App. 781 [133 P. 21]; *Cosgrave* v. *Donovan,* 52 Cal.App. 625 [199 P. 808]; *Agmar* v. *Solomon,* 87 Cal. App. 127 [261 P. 1029]; *Pedersen* v. *Reynolds,* 31 Cal.App.2d 18 [87 P.2d 51].)

The defendants' contention reveals their misappre-hension concerning the intention essential to establish an agreed boundary. They assume that the governing inten-tion is to mark the true line. That is a necessary element, but it is not the sole factor in forming the intention. An ad-ditional element is the intention to accept the marked boun-dary as the true boundary. The effect of the authorities is that the intention of the parties not to claim except in ac-cordance with the true line is entirely consistent with the doctrine of agreed boundaries. The application of the doc-trine is not prevented by their belief that the fence was upon the line fixed by the deed, nor by the circumstance that the line of the deeds could be determined by a survey.

Likewise, the defendants misconceive the extent of the uncertainty which should be present at the time of agree-ment. In cases applying the doctrine, as well as those deny-ing its application, it is shown that lack of knowledge by both parties of where the line is or should be drawn, is all that need be taken into consideration. If it be assumed that some degree of uncertainty in ascertaining the true boundary by the calls of the deed is required, there is evidence of such uncertainty in the record. It is not clear whether the deeds followed the survey or the survey followed the deeds. How-ever, discrepancies did appear. If, as Mr. Bedesen suggested, the survey was made first, and the draughtsman in formulat-ing the descriptions indulged certain assumptions which did not exist in fact, the discrepancies are easily explained. If

the deeds were drawn before the survey was made, then discrepancies among the then existing fence lines, established corners, and calls in the deeds create the uncertainty which supports the trial court's finding under the doctrine as urged by the defendants. There is no charge or showing of bad faith. In whatever light the facts are viewed, the trial court correctly declined to disturb the boundaries established by the parties.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.