[L. A. No. 27059. In Bank. Dec. 3, 1963.]

HORACE F. FRENCH et al., Plaintiffs and Respondents, v. EDSEL W. BRINKMAN et al., Defendants and Appellants.

Di Giorgio & Davis and Thomas R. Davis for Defendants and Appellants.

Mack, Bianco, King & Eyherabide, Henry C. Mack, Sr., and D. Bianco for Plaintiffs and Respondents.

McCOMB, J.—Defendants appeal from a judgment quieting title to a strip of land in plaintiffs and ordering defendants either to pay damages for destroying a wall that plaintiffs had erected thereon or to restore the wall within a reasonable time.

*Facts*: Plaintiffs, husband and wife, held title to adjoining lots 52 and 53 in a subdivision tract, most of which they at one time owned. Their house and swimming pool are located on lot 53.

In 1952 they erected a concrete block bathhouse on what they thought was the northwest corner of lot 53 and a con-

crete block wall, forming two sides of the bathhouse, one side of which wall extended easterly about half the length of the lot on what they thought was the northerly boundary between lots 52 and 53.

Prior to making these improvements, plaintiffs had searched for but had been unable to find the original surveyor's stakes delimiting lots 52 and 53. Accordingly, they "just guessed" at the property line. Since they owned both lots they were not too much concerned about the exact location of the boundary.

Four years later plaintiffs sold, or intended to sell, to defendants the land which they thought was the northerly adjoining lot. The deed, however, described the property sold simply as lot 52, by reference to the official map of the subdivision tract on file with the county recorder.

Sometime later defendants' building contractor discovered the wall and bathhouse were located some $3\frac{1}{2}$ feet to the north of the boundary as described in the deed. Thereafter defendants demolished the wall and retained the materials. The wall had cost plaintiffs $889 to build.

Plaintiffs then filed the present action to quiet their title to the $3\frac{1}{2}$ foot strip of land and to recover damages for the destruction of the wall.

■ *Questions:* First. *Were the findings sufficient to sustain plaintiffs' claim?*

*Yes.* The trial court found: "That it is true that the plaintiffs ... are the owners in fee and entitled to possession of that certain parcel of land described in plaintiffs' first amended complaint on file herein, and that plaintiffs were at all times prior to the 26th day of June, 1960, the owners of that certain cement block wall located on said land and described in plaintiffs' first amended complaint on file herein."

■ The rule is settled that where a party alleges his ownership of real estate in an action of this kind, a finding that he was or was not such owner is a finding of ultimate fact and not a conclusion of law. (*Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702, 709 [12] [336 P.2d 525]; *Daly* v. *Sorocco*, 80 Cal. 367, 368 [22 P. 211]; *Rahlves & Rahlves, Inc.* v. *Ambort*, 118 Cal.App.2d 465, 476 [3-4] [258 P.2d 18].)

■ Second. *Were the findings sufficient to sustain the judgment?*

*Yes.* This rule is here applicable: When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [1] [299 P.2d 231].)

 Applying the foregoing rule to the facts in the instant case, plaintiff Horace French testified, with reference to his intent in making the sale: ''I sold the lot up to the fence, and I figured the fence was right on the lot line, or thereabouts ... I figured I was selling them the lot up to the fence, and the fence was on the lot line.'' In response to the question, ''But you figured you weren't selling them a full lot?'' he answered, ''I was selling them a full lot if the fence is on the lot line; if it isn't I sell them up to the fence.''

Defendants' testimony stressed the fact that the transaction was handled by a real estate agent and that prior to the sale plaintiffs had not discussed the boundaries of the property with them, yet defendants admitted that at the time of the sale they lived ''right straight across half a block from'' plaintiffs; that they had seen the property in question (lot 52) many times and were familiar with it, having a week earlier purchased from plaintiffs the next lot (lot 51) adjoining it to the north; and that they knew the wall and bathhouse were there when they purchased lot 52.

For approximately one year no question was raised by any of the parties concerning the boundaries of their respective lots. Then defendants' building contractor discovered that the wall and bathhouse were located some 3½ feet north of the boundary as described in the deed.

Plaintiff Horace French testified that defendant Thelma Brinkman informed him of this fact and ''said that 'I didn't know I bought a fence when I bought this lot.' and I said, 'Well, I didn't know it either.' Words to that effect. I said, 'What do you want to do about it?' She said, 'Well, nothing, the fence is all right.' ''

Defendant Edsel Brinkman stated in a deposition that in discussing the matter with French, ''I told him as long as there was no dispute of any kind whatsoever that I didn't think the wall would have to be moved but if there ever come a dispute over the wall the wall would have to be moved *or we could buy the property.*'' (Italics added.)

Defendants took no action in the matter, and thereafter plaintiffs further improved the wall to protect their swimming pool, raising the wall four feet by installing fiber glass panels on top. Defendants neither objected nor paid any of the cost of the improvement.

The wall was assessed to plaintiffs, and the latter have paid the taxes thereon since it was built. In 1959, approximately two years after the discovery of the discrepancy between the wall and the deed, the taxing authorities undertook to reassess the properties. Plaintiff Horace French testified that he then "asked Mrs. Brinkman if she wanted to pay the tax on this wall, and she said, no, she wouldn't be interested in that at all."

In the following year the relations between the parties deteriorated over an incident arising from plaintiffs' desire to cut a 1-inch hole in the wall for the purpose of running a gas line to the bathhouse heater.

Plaintiffs retained an attorney to discuss a compromise of the dispute, but defendant Edsel Brinkman responded with a warning that "I'll tear that fence down before I go to court." The next day, without consulting plaintiffs, he carried out his threat and demolished the wall, retaining the materials. It was shown that the wall had cost plaintiffs $889 to build.

In light of the foregoing facts, plaintiffs were entitled to have their title quieted to the land in dispute upon either of the following theories: (1) under the doctrine of "practical location," which provides that where the owner of a larger tract conveys a parcel thereof that he has delineated on the ground by fixed monuments, and the parties rely on such monuments as establishing the intended boundaries, the latter will prevail over any differing description in the deed (cf. *Nebel* v. *Guyer*, 99 Cal.App.2d 30, 32 [1] [221 P.2d 337]; *Thiel* v. *Damrau*, 268 Wis. 76 [66 N.W.2d 747, 750 [1]]; Note, *Boundary Litigation in California* (1959) 11 Stan.L.Rev. 720, 733); or (2) under the theory of "agreed boundaries," which may be invoked where there is an uncertainty as to the true boundary line between coterminous owners and an agreement, express or implied, between such owners fixing the boundary line and "acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations *or under such circumstances that substantial loss would be caused by a change of its position*." (Italics added.) (*Ernie*

v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, 707 [6] ; *Mello* v. *Weaver,* 36 Cal.2d 456, 459 [2], 460 [7] [224 P.2d 691].)

The foregoing testimony constitutes sufficient evidence from which the trial court properly found the probative facts that sustain either or both theories upon which plaintiffs relied.

Third. *Did the trial court err in admitting parol evidence of the circumstances surrounding the conveyance, in derogation of the deed?*

*No.* It is the general rule that "if the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed." (*Laux* v. *Freed,* 53 Cal.2d 512, 523 [7] [2 Cal.Rptr. 265, 348 P.2d 873].)

The foregoing rule is not applicable to the facts in the present case. In *Laux* v. *Freed, supra,* in offering the evidence the plaintiff-grantor sought to limit a general and unrestricted grant of an easement to certain specified uses, there being no ambiguity in the terms of the deed as to *the nature of the estate granted.* Hence, the general rule on parol evidence was applicable.

In the present case, however, special rules come into effect allowing the admission of parol evidence on the facts presented. Under plaintiffs' theory, they intended to sell, and defendants intended to buy, only that parcel north of the visible monuments, i.e., the wall and bathhouse; through mutual mistake the deed did not truly express their intention (Civ. Code, § 3399)[1]; therefore, the evidence was admissible in order that the deed might be reformed to conform to such true intent. (*Martinelli* v. *Gabriel,* 103 Cal.App.2d 818, 823 [3], 825 [6] [230 P.2d 444]; *Merkle* v. *Merkle,* 85 Cal.App. 87, 110-112 [10-12] [258 P. 969]; cf. *McKevitt* v. *City of Sacramento,* 55 Cal.App. 117, 128-129 [10] [203 P. 132].)

Under plaintiffs' theory of implied boundary agreement, parol evidence is admissible to show that agreement and its

---

[1]Section 3399 of the Civil Code reads: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

terms. In *Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460 [7], we said: "... the doubt [as to the location of the boundary] may arise from a believed uncertainty which may be proved *by direct evidence or inferred from the circumstances* surrounding the parties at the time when the agreement is deemed to have been made [citations]...." (Italics added.)

Neither the parol evidence rule nor the statute of frauds is violated, for it is settled that " 'the line so agreed on becomes in legal effect the true line, that the agreement as to the line may be in parol and that it does not operate to convey title to the land which may lie between the agreed line and the true line, but that it fixes the line itself and the description carries title up to the agreed line. . . .' " (*Martin* v. *Lopes,* 28 Cal.2d 618, 622-623 [2] [170 P.2d 881].)

Furthermore, at the time of trial no objection or motion to strike was made by defendants with respect to any of the parol evidence, and the rule is here applicable that the admission of parol evidence to vary or add to an instrument cannot be objected to for the first time in an appellate court. (*Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 505-506 [5, 6] [326 P.2d 135].)

Pursuant to a stipulation of counsel,[2] the judgment of the trial court is modified by striking therefrom the description of the property to which plaintiffs' title is quieted, as it now appears in paragraph 1 of said judgment, and substituting therefor the following:

All that portion of Lot 52 of Tract No. 1404 shown on Map recorded in Book 6 Page 137 of Maps recorded July 1, 1948, in the Office of the Kern County Recorder, described as follows: Beginning at the Southwest corner of Lot 52 of said Tract 1404; Thence North 89 degrees 56 minutes 08 seconds East along the North line of Lot 53, 120.00 feet to Northeast corner thereof; Thence North 00 degrees 15 minutes 10 seconds East along the East line of Lot 52, 1.688 feet to a

---

[2]The parties on January 15, 1963, stipulated as follows: "... 2. That if the judgment of the trial court is affirmed by the Court on this appeal, it may be modified by striking from the judgment the description of the property to which plaintiffs' title is quieted, as it now appears in Paragraph I of said judgment ... and substituting therefor the following: [the description hereinafter set forth in the body of this opinion].

"3. That if said judgment is affirmed on appeal, the foregoing modification shall not affect respondents' right to recover costs on appeal which would otherwise be recoverable by a respondent where a judgment is affirmed without modification."

point; Thence North 89 degrees 07 minutes 47 seconds West, 120.006 feet to a point in the West line of Lot 52; Thence south 00 degrees 15 minutes 10 seconds West, along the West line of Lot 52, 3.646 feet to the point of beginning.

As so modified, the judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.