[Civ. No. 22823.   First Dist., Div. Three.   Oct. 27, 1966.]

ABORIGINE LUMBER COMPANY, Plaintiff and Appellant, v. FRANK HYMAN et al., Defendants and Respondents.

Timothy W. O'Brien for Plaintiff and Appellant.

Leo M. Cook for Defendants and Respondents.

SALSMAN, J. — Appellant Aborigine Lumber Company brought this action against respondents Frank Hyman and Jack Hyman to recover damages for trespass to timber, and for treble damages.[1] Respondents' answer denied the alleged trespass and affirmatively pleaded as a defense an agreed boundary line, established since 1943. The trial court found that predecessors of the parties to this action had agreed upon a boundary between their respective parcels of land, and thereupon entered judgment in respondents' favor. On appeal it is contended that the evidence is insufficient to support this finding and hence that the judgment should be reversed. Our review of the record, however, convinces us that the evidence fully supports the judgment, and we therefore affirm.

The central issue in the case concerns the boundary line between the north half of the northeast quarter and the south half of the northeast quarter of Section 35, Township 19 North, Range 17 West, M.D.B. & M. Both of these parcels were formerly owned by the Union Lumber Company or the Glenn Blair Lumber Company.[2]

---

[1] Section 3346 of the Civil Code makes provision for treble damages for trespass to ''. . . timber, trees, or underwood upon the land of another. . . .'' where the injury is wrongful, subject to exceptions noted in the statute.

[2] In 1942 Glenn Blair was managed by Union; the two corporations had overlapping officers, a joint land purchase operation, and used the same surveying crew.

In 1941 a Mr. Cogburn purchased the north half of the northeast quarter of Section 35 from the Union Lumber Company. Union retained the south half of the quarter section. Cogburn was uncertain as to the boundary line between the two parcels. He asked a Mr. Montgomery, who worked in the surveying and land management department of Union, for help. Montgomery asked a Mr. Gray, who was in charge of the land and timber department of Union, about the matter, and Gray referred him to Thorne Holmes, Union's surveyor. Holmes supplied Montgomery with surveying data and measurements, and instructed him how to conduct the survey. Montgomery was a competent surveyor's assistant. In doing the actual field work Montgomery had the help of his brother, who also worked for Union under the supervision of Thorne Holmes. The Montgomerys, using data and measurements supplied by Union, Cogburn's grantor, ran a line from the easterly line of the northeast quarter of Section 35 west to a point near the westerly line of the quarter section and established a boundary line between the north half and the south half of the northeast quarter. They blazed trees and marked the line as they went until they reached the banks of Pudding Creek, near the west boundary line of the quarter section, where Cogburn instructed them they need go no further. Cogburn observed the work of the Montgomerys as it progressed, and after it was completed was satisfied that it was his south line.

In 1950 respondents acquired the south half of the northeast quarter of Section 35 from a Mr. Curtis, who had acquired it from Union. Curtis knew of the blazed line between the two parcels and pointed it out to respondents. Thereafter respondents and Cogburn, who still owned the property on the north, had a talk about the boundary line. Both Cogburn and respondents agreed that the line blazed by Montgomery in 1942 was the boundary line.

In 1953 Cogburn sold his land to McGuire and at the time of sale pointed out the south boundary line of his parcel. McGuire accepted the blazed line as that marking his ownership. In 1957 McGuire sold to appellant. Appellant's manager was shown the blazed line on the southerly boundary of McGuire's holding. By this time respondents had flagged the blazed line and it was clearly visible on the ground.

In 1958, 1959 and 1960 respondents conducted logging operations on their property and logged up to the blazed line. They sold their logs to appellant. On one occasion they asked and

received appellant's permission to install a landing north of the blazed line for convenience in conducting their operations.

In 1962 appellant had a licensed surveyor survey a boundary line between the north half and the south half of the northeast quarter of Section 35. This line showed the boundary to be several hundred feet to the south of the line blazed and marked by the Montgomerys in 1942. This litigation then began.

The single issue in the case is whether the predecessors of the parties agreed upon a boundary line between the two parcels, fixed the boundary line and thereafter abided by it.

The inaccuracy of early land surveys in this state has been a fruitful source of litigation between adjoining landowners. (See Loeb, *The Establishment of Boundary Lines by Practical Location*, 4 Cal.L.Rev. 179.) In cases of doubt and uncertainty the courts look with favor upon private agreements fixing and marking boundary lines. (*Loustalot* v. *McKeel*, 157 Cal. 634 [108 P. 707]; *Crook* v. *Leinenweaver*, 100 Cal.App.2d 790, 792 [224 P.2d 891].)

The requirements for an agreed boundary have been set forth in many cases. (See *French* v. *Brinkman*, 60 Cal.2d 547 [35 Cal.Rptr. 289, 387 P.2d 1]; *Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702 [336 P.2d 525]; *Mello* v. *Weaver*, 36 Cal.2d 456 [224 P.2d 691]; *Martin* v. *Lopes*, 28 Cal.2d 618, 625 [170 P.2d 881]; *Janes* v. *LeDeit*, 228 Cal.App.2d 474 [39 Cal.Rptr. 559].) ■ The essential elements are these: (1) There must be uncertainty as to the true boundary line; (2) the parties must agree upon a common boundary; (3) the boundary must be marked, or otherwise identifiable upon the ground, and (4) there must be an acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position. (See *Ernie* v. *Trinity Lutheran Church, supra*, 51 Cal.2d 702, 707; *French* v. *Brinkman, supra*, 60 Cal.2d 547, 551; *Janes* v. *LeDeit, supra*, 228 Cal.App.2d 474, 480-481.) Some cases have suggested a further element necessary to the validity of an agreed boundary, namely occupancy of the real property up to the line. (*Nusbickel* v. *Stevens Ranch Co.*, 187 Cal. 15, 16 [200 P. 651]; *Kraemer* v. *Superior Oil Co.*, 240 Cal.App.2d 642, 652 [49 Cal. Rptr. 869]; *Pilibos* v. *Gramas*, 104 Cal.App.2d 353 [231 P.2d 502].) If such a requirement be deemed to exist it is suffi-

ciently satisfied by the facts of this case, as we shall later point out.

Appellant first contends that the element of uncertainty as to the true boundary is not established because an accurate survey could and indeed did establish the true boundary line between the two parcels. This argument was met and answered long ago in *Silva v. Azevedo*, 178 Cal. 495, 498 [173 P. 929], where the court said: "It is argued that the 'agreed boundary' rule applies only where there is an uncertainty regarding the position of the boundary, and that in this case there was no such uncertainty, since the true location of the line could always have been determined by a correct measurement. But this condition exists in virtually every case in which the aid of the rule is sought. There is no occasion for asserting that a boundary has been established by agreement, unless the description in the conveyance in reality designates a different boundary. 'It is only where the true location is subsequently ascertained that actions of this kind arise.'" In *Ernie v. Trinity Lutheran Church, supra,* 51 Cal.2d 702, 707-708, the court noted that: "It is not required that the true location be absolutely unascertainable (*Price v. De Reyes,* 161 Cal. 484, 489 [119 P. 893]); that an accurate survey from the calls in the deed is possible (*Silva v. Azevedo,* 178 Cal. 495, 498 [173 P. 929]), or that the uncertainty should appear from the deeds (*Mello v. Weaver, supra,* 36 Cal.2d 456, 460). The line may be founded on a mistake. (*Nusbickel v. Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651].)" Here it is clear that Cogburn did not know the true location of his south boundary line and it is a fair inference from the facts that his grantor, the Union Lumber Company, was also unaware of its exact location. As the Supreme Court said in *Martin v. Lopes, supra,* 28 Cal.2d 618, 625, all that is required is that there be a lack of knowledge by both owners as to where the boundary line is or should be drawn.

Appellant next says there was no agreement that the line blazed by the Montgomerys should be the boundary line. It is argued that for such an agreement to exist it must have been made by Cogburn, appellant's predecessor in title, with respondents' predecessor in title. Such an agreement may be express or implied. (See *French v. Brinkman, supra,* 60 Cal.2d 547 at p. 551.) It may be implied from the facts and circumstances of the case, including, of course, the conduct of the parties. The trial court found that, after the line was established by the Montgomerys, both Cogburn and the Union

Lumber Company accepted the line as blazed and marked, and their successors likewise accepted it until the summer of 1962, as the correct location of the boundary line between the two parcels. ■ Acceptance of the line by both Cogburn and the Union Lumber Company and their successors is sufficient evidence to show an agreement between Cogburn and the Union Lumber Company that the blazed line was in fact the boundary line between their respective properties.

Finally, appellant argues that the element of occupancy is absent. Occupancy it is argued is essential to application of the doctrine of agreed boundary in order to take the case out of the statute of frauds, and is further necessary to give notice to successors in interest. We doubt that actual occupancy is necessary in every case to application of the agreed boundary rule. It is true that occupancy has been mentioned as a requirement in some cases. (See *Nusbickel* v. *Stevens Ranch Co., supra,* 187 Cal. 15, 16; *Kraemer* v. *Superior Oil Co., supra,* 240 Cal.App.2d 642, 652.) It is not mentioned as a mandatory requirement in *French, Ernie* and *Janes,* previously cited, although actual occupancy was present in those cases. But even if occupancy be deemed a requirement, it is present here.

The property here involved is not town lots, where encroachment beyond the true boundary often occurs and actual occupancy is manifest, as in the *French* and *Ernie* cases. Here, the agreed boundary line separated two 80-acre parcels. The land is timbered, broken by steep hills and deep ravines. Its principal utility is as a source of timber, with crops maturing at 50-year intervals. ■ Occupancy is sufficiently established by the fact that owners on both sides of the agreed line were at various times physically present upon their respective parcels, and that, as each conveyed away his interest, he physically pointed out for the benefit of his grantee the agreed boundary line. Considering the character of the terrain and the use for which the property was intended, namely the growing of commercial timber, nothing more in the way of occupancy was required.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied November 25, 1966.