[Civ. No. 4139. Fourth Dist. Dec. 4, 1950.]

ARTHUR CROOK et al., Respondents, v. WILLIAM
LEINENWEAVER et al., Appellants.

Walker & Sullivan for Appellants.

Joseph Seymour for Respondents.

BARNARD, P. J.—This is an action to establish a boundary line and to compel the removal of portions of certain structures on the land claimed by the plaintiffs.

In 1924, a tract of land owned by a bank was subdivided. The westerly portion of Lot 99 of that subdivision, which is now owned by the plaintiffs, was conveyed by a deed referring to the lot number and describing the part conveyed by metes and bounds. The part of Lot 99 thus conveyed was rectangular in shape but somewhat irregular in that its southerly line was some 20 feet longer than its northerly line, and its westerly line was about 100 feet longer than its easterly line. In 1926, the defendants acquired the easterly portion of Lot 99 by a deed conveying all of that lot except a portion described by metes and bounds, the latter being the same metes and bounds described in the prior deed.

The original survey of the property in 1924 was made by one Bradley, a licensed surveyor, who placed a stake in the northerly line of Lot 99 and one in the southerly line of that lot for the purpose of indicating the boundary line between these parcels. This line is referred to as the "Bradley line." In 1946, the plaintiffs employed a licensed surveyor named Davidson, who fixed the easterly boundary of plaintiffs' land by taking a point 2 feet easterly at the north and one 5.65 feet easterly at the south from the stakes set by Bradley 22 years before. This strip of land, 2 feet wide at the north and 5.65 feet wide at the south, is the area here in dispute.

The plaintiffs brought this action claiming that the Davidson line is the true boundary line, and alleging that the defendants have deprived them of the use of the disputed strip and have constructed portions of structures thereon which they refuse to move. The defendants answered claiming ownership of the disputed strip and asking that it be adjudged that the Bradley line is the true boundary line. The court made findings favorable to the defendants, but concluded that the facts found required a judgment in favor of the plaintiffs, and such a judgment was entered. The defendants moved to vacate the judgment under the provisions of sections 663 and 663a of the Code of Civil Procedure. An order denying that motion was entered, and the defendants have appealed from that order. The appeal is thus presented on the clerk's transcript alone.

Contending that the conclusions of law are erroneous and not consistent with or supported by the findings of fact, the appellants argue that under the facts as found by the court

the Bradley line should have been held to be an agreed boundary line, and that an uncertainty with respect to the boundary and an agreement to establish a certain line, the essential elements of an agreed boundary line, appear from the facts as found by the court. The respondents contend that the agreed boundary line doctrine has no application here since there is nothing in the record to show that the Bradley line was established because of any uncertainty, dispute or argument with respect to the true line, and that the mere acquiescence of the respondents in the wrong boundary for a period of years does not estop them from now asserting the true boundary line. They rely on *Clapp* v. *Churchill*, 164 Cal. 741 [130 P. 1061], and similar cases, where it has been held that mere acquiescence, in the absence of more positive action by the parties, is not sufficient to establish a boundary line which is not, in fact, the true line.

The doctrine of an agreed boundary line is well settled, and such agreements are favored by the courts. An actual argument or dispute is not necessary in such cases. The essential elements are an uncertainty as to the true position of the boundary and an agreement to accept a location as fixed by the parties. The fact of an agreement may be inferred from acts of the parties. Acquiescence and use of the property, while not controlling, may be considered under some circumstances for their evidentiary value. (*Martin* v. *Lopes*, 28 Cal.2d 618 [170 P.2d 881]; *Swartzbaugh* v. *Sargent*, 30 Cal.App.2d 467 [86 P.2d 895]; *Board of Trustees* v. *Miller*, 54 Cal.App. 102 [201 P. 952]; *Needham* v. *Collamer*, 94 Cal.App.2d 609 [211 P.2d 308].)

It was stipulated that each party paid taxes in accordance with the description in his deed. While the court found that the Davidson line was the true boundary line, it found the following facts: Prior to March 31, 1924, one Bradley, a licensed surveyor employed by the owner of Lot 99, placed two stakes approximately 655.71 feet apart, one in the northerly line and one in the southerly line of Lot 99, for the purpose of establishing the westerly boundary line of the property now owned by the defendants and the easterly boundary line of the property now owned by the plaintiffs. In March, 1926, the defendants were shown these stakes by an agent of the owner of Lot 99, and entered into a contract to purchase the easterly portion of this lot as above described. They took possession on April 1, 1926, and occupied all of the eastern portion of Lot 99 as far west as the Bradley line.

They received a deed on July 12, 1934. On taking possession they found a concrete foundation on the property extending about 6 inches west of the line later fixed by Davidson. During 1926, they constructed a garage on this foundation, the west wall of which extends about 2 feet west of the line later fixed by Davidson. In 1930, they constructed pig pens and chicken houses which extend 2 feet west of the Davidson line. Since April 11, 1928, the plaintiffs have treated the Bradley line as the easterly boundary line of their premises and have acquiesced in the Bradley line as the boundary line between their premises and those of the defendants, until after a new survey was made in 1946. In October 1941, the plaintiff Arthur Crook and the defendant William Leinenweaver "desiring to definitely establish the line between the stakes (set by Bradley) did, working together, establish said line upon the ground." Immediately thereafter, Crook planted a row of eucalyptus trees 2 feet west of and parallel to the Bradley line, for a distance of 300 feet. During that same month Crook also constructed a substantial fence along the Bradley line for a distance of 100 feet. During the same month Leinenweaver planted a row of eucalyptus and cypress trees 2 feet from and parallel to the Bradley line, for a distance of 400 feet. The defendants also planted shrubs and flowers along other portions of the Bradley line so that the entire length of that line can be readily determined from the trees, fences, shrubs and flowers installed by both parties. In September, 1946, the plaintiffs employed a licensed surveyor who fixed the boundary on what we have called the Davidson line, and the plaintiffs now claim this to be the true boundary line. The defendants "have occupied for more than five years last past" all of the eastern portion of Lot 99, as far west as the Bradley line. The stake set by Bradley in the southerly line of Lot 99 is still in place and the stake set by him in the northerly line of Lot 99 was in place up to and including October of 1941, "and may now be readily located." There was no dispute regarding the boundary line between these parties prior to the year 1946, when the Davidson survey was made, and since that survey there has been no agreement as to the true boundary.

From these findings of fact the court found as conclusions of law (a) "That although all the equities in this matter lie with the defendants herein equity is not a factor to be considered in a boundary line dispute"; (b) "That pursuant to the findings of the fact hereinabove set forth it does not

appear to the court that there was a dispute or argument between the parties nor an agreement such as to bring this case within the doctrine of 'an agreed boundary line' ''; and (c) that the plaintiffs were entitled to a judgment establishing the Davidson line as the true boundary line.

After referring to the one fact as found, that there was no dispute, the court concluded that there was no sufficient agreement within the meaning of the agreed boundary doctrine. Such a conclusion was erroneous since the matter of a dispute or argument was a false quantity. The facts found disclose both an uncertainty as to the location of the line and an agreement, within the meaning and requirement of that doctrine. The fact that these parties in October, 1941, established the line between the Bradley stakes upon the ground, with a desire to definitely establish that line, shows that some uncertainty existed with respect to how the boundary line ran, which they desired to settle. Otherwise, it would have served no purpose to take such definite steps and work together to actually establish such a line upon the ground. Having thus worked together for this purpose, and having thus established that line on the ground, the parties then planted trees and constructed a fence along portions of the line they had located, in a manner which clearly marked that line. They then accepted and acted upon that line for five years, and until sometime after a new survey was made. These positive steps go far beyond a mere acquiescence, and disclose an agreement within the meaning of the doctrine in question. This is not only a reasonable inference from the facts as found by the court, but is the only inference reasonably to be drawn therefrom. It would be unreasonable to suppose that the actions of these parties in thus locating and establishing this line on the ground in October, 1941, were merely idle acts which had no relation to fixing the boundary line or to reaching an agreement in that connection.

■ The conclusions drawn by the trial court are inconsistent with the facts found, and are not supported by those facts. Not only was there a most suggestive acquiescence from 1926 to 1941, with a permitted use in reliance on the original survey, but positive action was taken in 1941 which removed an existing uncertainty, and which established an agreed boundary under the principles set forth in the cases cited, and in many other cases. The court recognized the equities of the situation, but erroneously applied conclusions of law which are inconsistent with the facts as found.

The order appealed from is reversed, with directions to vacate the judgment and enter a judgment in favor of the defendants.

Griffin, J., and Mussell, J., concurred.