[Civ. No. 17. Fifth Dist. Jan. 16, 1962.]

RAYMOND J. LINK et al., Plaintiffs and Respondents, v. COLE INVESTMENT COMPANY et al., Defendants and Appellants; ANGUS F. GREENE et al., Cross-defendants and Respondents.

Wadsworth, Fraser & McClung and Charles E. McClung for Defendants and Appellants.

Conron, Heard & James, Conron, Heard, James & Hamilton and Calvin H. Conron, Jr., for Respondents.

STONE, J.—Plaintiffs filed an action for damages, charging defendants with misrepresenting that certain real property sold by defendants to plaintiffs had highway frontage. In a trial to the court without a jury, the court found that there was a narrow wedge of land between the property and the highway, and awarded plaintiffs a judgment in the sum of $3,000. Defendants have appealed. The defendant Cole Investment Co. also filed a cross-complaint against Angus F. Greene and Vemba M. Greene, who claim title to the wedge of land. The trial court found for cross-defendants, and cross-complainant has appealed.

Plaintiffs purchased from defendants approximately 4 acres of land located near the town of Mojave, in southeastern Kern County. The property was owned by defendant Cole Investment Co., a corporation, which corporation plaintiffs contend was the *alter ego* of defendants Bandy. The property is 250 feet wide north and south, and it is not denied that defendants Bandy represented that the east boundary line, 250 feet in length, fronted on Highway 6. Some time after plaintiffs purchased the property, they were informed by the Planning Commission of Kern County that the land did not front on the highway. The east boundary of the property is also a segment of the section line between sections 21 and 22, both sections lying in Township 10 North, Range 12 West, S.B.B. & M. Although Highway 6 lies generally north and south along the section line, it veers slightly to the northeast. The western edge of the highway at the south end of the sec-

tion line lies in section 21, while at the northern end, the western edge lies in section 22. The question is, does the western boundary of the highway leave section 21 and cross into section 22 before or after it passes the subject property which fronts on the section line?

The original government survey of the area was made in 1856. The original north corner of the section line between sections 21 and 22 was lost along with other locations, and as a result the property was resurveyed in 1912, 1915, 1917, 1920, 1935 and 1957. None of the surveys purport to have found the original monuments by which the government survey located the north corner of the section line between sections 21 and 22. The two surveys of importance to this action are the highway survey of 1920 and the so-called Hathaway survey of 1935. In 1920 the Division of Highways surveyed the area for the purpose of laying out Highway 6, and to provide descriptions for right-of-way deeds. This survey placed the common north corner of sections 21 and 22, or the north end of the section line, at a point which coincided with the location of the corner found by a county survey in 1917. Deeds were prepared by the Division of Highways on the basis of this survey, they were executed by the predecessors in interest of the present owners of the two parcels of property, and they were recorded in the office of the County Recorder of Kern County. In 1935 Hathaway, a deputy county surveyor, located the corner some 98 feet west of the point where it had been located by the highway survey and, of course, the same distance west of the point referred to in the right-of-way deeds as the north section corner.

The highway survey and the description used in the deeds place the 250 feet of frontage of plaintiffs' property contiguous to the west boundary of the highway at all points. The Hathaway survey moves the line west, leaving a narrow wedge 2.7 feet wide at the south end and 11.3 feet wide at the north end, between plaintiffs' property and the highway. Plaintiffs' expert witness, a Mr. Harrison, testified that the survey made by Deputy County Surveyor Hathaway in 1935 is more reliable than the 1917 county survey or the 1920 highway survey. The trial court so found, and gave judgment for plaintiffs.

Defendant Cole Investment Co. filed a cross-complaint against the owners of the contiguous property, Angus F. Greene and Vemba M. Greene. Cole Investment pleaded three causes of action, one based on adverse possession of the strip

of property which plaintiffs and cross-defendants allege separates the parcel of property from the highway; a second alleging an agreed boundary evidenced by the highway deeds; and third, a quiet title action predicated upon the highway survey. The court found against cross-complainant on all three causes of action, and cross-complainant has appealed from the judgment subsequently entered in favor of cross-defendants.

Because of the unusual facts of this case, we do not think the Hathaway survey controls, despite the finding of the trial court. Although the predecessors of the parties executed separate conveyances of right-of-way to the State of California for highway purposes, each deed contained exactly the same description insofar as here pertinent. Had a common grantor owned both parcels and executed a single deed, there would be no question about the rights of the successors in interest to the real property on either side of the section line. The situation here is most uncommon in that although the land on each side of the section line was owned by different persons, the same description was used in each deed to convey the right-of-way to the state. The two parcels are contiguous on opposite sides of the section line, one parcel lying in section 21, the other in section 22. It appears reasonably certain that the identical description was used in the two deeds to obviate the very question that has now arisen, that is, the location of the highway with reference to the section line. The deeds were recorded April 29, 1931, and June 30, 1933. The common description used in the deed of each grantor, insofar as here pertinent, reads as follows:

"In Sections 21 and 22, T. 10 N. R. 12 W., S.B.B. & M.

"Said State highway right of way hereby granted, conveyed and dedicated is more particularly described as follows, to-wit:

"A strip of land 90.00 feet wide, being 30.00 feet wide on the easterly side and 60.00 feet wide on the westerly side of the following described center line of State Highway Layout No. 445, adopted January 18, 1921, said center line being parallel with and distant 130.00 feet, westerly, measured at right angles to the center line of the main track of the Southern Pacific Railroad, as now located and constructed across said Sections 21 and 22;

"Beginning at the intersection of said center line with the south line of said Section 22, which point bears N. 88° 23′ E., along said south line 48.50 feet from a 1″ iron pipe set by the

County Surveyor, marking the southwest corner thereof; thence from said point of beginning N. 1° 27' E., along said center line a distance of 5343.90 feet, more or less to a point in the north line of said Section 22, which point bears N. 88° 48' E., along said north line, 134.20 feet from the corner common to Sections 15, 16, 21 and 22, said Township and Range.''

It is important to note that no one disputes the location of the corner at the south end of the section line referred to in the description. Respondents urge, however, that the deeds are not controlling since the location of the corner at the north end of the section line, as described in the deeds and in the 1917 county survey and the highway survey, is a false call. We do not believe this argument is controlling because the description leaves no doubt as to the location of the north corner designated by the grantors. The south corner was marked by a pipe, referred to in the deeds and found on the ground. We emphasize that the location of this south corner is not disputed. The railroad, referred to in the deeds, is a fixed and existing monument; the center line of the highway is also a fixed and existing monument; by following the courses and distances in the deeds as related to these fixed monuments, the north corner can be readily located on the ground. The description, including the north corner, was recognized by the State of California and by the owners of the land on either side of the section line who executed the deeds. They were the predecessors in interest of the parties hereto.

Since (a) the highway right-of-way deeds were executed by the predecessors in interest of the parties hereto, (b) the monuments were then in existence and are still in existence, (c) the disputed common north corner of sections 21 and 22 was at all times and is now readily ascertainable from these fixed monuments using the distances and the calls of the deeds, it follows that the language of *Beall* v. *Weir*, 11 Cal.App. 364, 368 [105 P. 133], is applicable. The court there said:

''When land has once been conveyed with reference to stakes and monuments which were fixed and in place at the time of such conveyance the conveyance cannot be afterward defeated by a new survey which shows that the stakes and monuments as originally set were not as a matter of fact in their true places. A contrary rule would upset titles and make all conveyances more or less uncertain. It is always the endeavor of courts to ascertain the intention of the parties in applying the description contained in a deed to the monu-

ments referred to therein so as to locate the land in accordance with the intention of the parties.''

The wisdom of the rule of *Beall* is evident in this case for the record reveals a reasonable doubt as to whether the Hathaway survey is a reconstruction of the original government survey. The uncertainty is demonstrated by the following excerpt from the testimony of respondents' own surveyor and expert witness, Mr. Harrison:

''Q. You —— did you find any place in Mr. Hathaway's field notes any claim that he is perpetuating a government marker for the northeast quarter of Section 21? A. No, sir.

''Q. Answer? A. No, sir. Only the northeast corner of 16.

''Q. Only the northeast corner of 16? A. Yes.

''Q. Are you positive, Mr. Harrison, that the present marker in use northeast corner of Section 21 is a perpetuation of the original government marker? A. Oh, no, no. I don't believe that. In fact I think it's been destroyed many, many years. But I think it is the most nearly or let's put it this way, is the best and closest position that it can be re-established to the Kemper survey. Now, excuse me, I don't even purport to say Kemper's is right. I'm merely saying that this corner is a re-establishment of Kemper's corner in my opinion.

''Q. In your opinion that the Hathaway re-established the Kemper corner? A. That is right.

''Q. Or came pretty close to it? A. That is correct.

''Q. But you are not saying whether Kemper's was the government corner or not? A. No, I can't say that because he doesn't refer to it in his notes as the government corner; however, any surveys that were done in the early days had better chance of finding the government corner than what we find now. I will even go so far that I believe this one and half inch iron pipe is probably a perpetuation of the Karwyle survey.''

As further evidence of the uncertainty, Mr. Lane, who had been a deputy county surveyor for some 33 years, testified as follows:

''Q. Mr. Lane, is, are you able to state that the Hathaway monument at the northeast corner of Section 21 is a perpetuation of the original government monument? A. I would say it's doubtful.''

On cross-examination, the following testimony was given by Mr. Lane:

''Q. I'll ask you if you have an opinion as to whether or not the Hathaway monument as shown on his notes and plat

is the most reliable evidence of the true location of that section that you have in your office? A. I would say it's doubtful.

"Q. It is doubtful. You can't say it is. You can't say it isn't? A. Can't say it is or isn't."

Room for doubt is also revealed by plaintiffs' pleadings in that plaintiffs' complaint originally alleged that the wedge of land was 22.82 feet in width at the north and 11.22 feet in width at the south, but at the outset of the trial plaintiffs were granted leave to amend their complaint to allege the wedge to be 12 feet in width at the north and 3.14 feet at the south. Their proof showed the figures to be 11.3 feet and 2.7 feet at the north and south ends, respectively. This is no reflection upon any witness or any party, but it does demonstrate the accuracy of the observations and conclusions of the Supreme Court in *Young* v. *Blakeman,* 153 Cal. 477 [95 P. 888], wherein the court said, at page 480:

"When the division line of adjoining owners is designated in their respective deeds as a line beginning at a specified distance from a fixed object, the only method of ascertaining the location of the line on the ground is by measuring the required distance from the object. Experience shows that such measurements, made at different times by different persons with different instruments, will usually vary somewhat. The position of the object or monument at which the course begins may also be changed and the change may not be known to the parties, or there may be no means of ascertaining its original position. If the position of the line always remained to be ascertained by measurement alone, the result would be that it would not be a fixed boundary, but would be subject to change with every new measurement. Such uncertainty and instability in the title to land would be intolerable."

The predecessors of the parties, having established a line by common grants referring to fixed monuments which were located on the ground and from which the line could definitely be established by courses and distances, their successors in interest should be estopped from contending that the description contained in the deeds is erroneous. As was said in *Beall,* if there is to be consistency in the establishment of property lines and property rights, deeds or agreements executed with reference to established monuments which can be ascertained on the ground, must control.

Counsel for plaintiffs and cross-defendants assert that in order for the court to apply the principles enunciated in *Beall* v. *Weir, supra,* and *Young* v. *Blakeman, supra,* it must con-

clude that the case comes within the doctrine of "agreed boundaries." We think the facts of the case do bring it within the rationale of that doctrine. First, it should be pointed out that an actual dispute between the contiguous owners need not be shown before the doctrine is applicable. In discussing the principles of law pertaining to agreed boundaries, the Supreme Court had this to say in the case of *Martin* v. *Lopes,* 28 Cal.2d 618 [170 P.2d 881], at page 622:

"The case of *Sneed* v. *Osborn, supra* (25 Cal. 619, 627), laid down the rule in this state in accordance with what was said to be abundantly supported by the authorities, that when owners of adjoining lands have acquiesced for a considerable time, at least equal to the period prescribed by the statute of limitations, in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line. In that case boundary lines were drawn by the parties in accordance with stakes set by them at the direction of a surveyor. It appeared that the position of the initial point called for by the deed was uncertain. The court observed that probably no two men would take the deed, and going upon the land separately, would fix upon the same place for the starting point. Relying on that case and others the court in *Biggins* v. *Champlin,* 59 Cal. 113, 116, said that it made no difference that the parties, in making the location, acted under a mistake as to the true line. In *Helm* v. *Wilson,* 76 Cal. 476, 485 [18 P. 604], *the theory that there must have been a dispute as to the true line was rejected as a false quantity.*" (Emphasis added.) (See also *Mello* v. *Weaver,* 36 Cal.2d 456 [224 P.2d 691].)

Respondents next assert that there was no agreement to establish the boundary between the predecessors in interest of the parties. It cannot be successfully argued, however, that there was no uncertainty, since the record is replete with surveys over the years establishing and reestablishing in varying places the common north corner of sections 21 and 22. In the face of this uncertainty, each grantor, by signing a deed containing an identical description and thereby establishing the boundary of the highway and designating a common section corner at each end of the section line with reference to fixed monuments, agreed that the highway boundary and the section line were established according to the description in the deeds. The fact that separate deeds were executed to accomplish a common purpose does not remove the case from the

rationale of the agreed boundary doctrine. Each party, by accepting the same description and the same section corners, not only agreed in writing to the line, but the writings became public records by the recording thereof in the office of the County Recorder. Such recording gave notice to all successors in interest, as well as to the world, that the section line and highway right-of-way were established as defined by the description in the deeds.

The facts of the case bring it well within the language of *Crook* v. *Leinenweaver*, 100 Cal.App.2d 790 [224 P.2d 891], wherein the court discussed the agreed boundary doctrine. In summarizing the doctrine the court said, at page 792:

"The doctrine of an agreed boundary line is well settled, and such agreements are favored by the courts. *An actual argument or dispute is not necessary in such cases.* The essential elements are an uncertainty as to the true position of the boundary and an agreement to accept a location as fixed by the parties. *The fact of an agreement may be inferred from acts of the parties.* Acquiescence and use of the property, while not controlling, may be considered under some circumstances for their evidentiary value." (Emphasis added.)

The only remaining aspect of the doctrine of agreed boundary which we have not discussed is the "period of acquiescence." Although the court stated in *Crook* v. *Leinenweaver, supra,* that "Acquiescence and use of the property, while not controlling, may be considered under some circumstances for their evidentiary value," the facts of this case disclose acquiescence in the line as fixed by the highway right-of-way deeds for several years. It was well over four years before any question was raised. The case comes within the language of *Martin* v. *Lopes, supra,* where the court, in considering what constitutes acquiescence in an agreed boundary, said that it is sufficient if it has existed "for a considerable time, at least equal to the period prescribed by the statute of limitations, . . ."

The judgments for plaintiffs on the complaint and for cross-defendants on the cross-complaint, are reversed.

Conley, P. J., and Brown, J., concurred.

A petition for a rehearing was denied February 13, 1962, and respondents' petition for a hearing by the Supreme Court was denied March 14, 1962.