[Civ. No. 21921. First Dist., Div. Two. Mar. 9, 1965.]

LAURENCE G. KRAUS et al., Plaintiffs and Appellants, v. WILLIAM T. GRISWOLD et al., Defendants and Respondents.

Bernard Petrie for Plaintiffs and Appellants.

Charles L. Convis for Defendants and Respondents.

BRAY, J.*—Plaintiffs appeal from a judgment quieting title and fixing a boundary line in favor of defendants.

### QUESTIONS PRESENTED

1. Was there an agreement to establish a boundary line?
2. Did the Waite survey establish a boundary line?
3. Was a boundary established by practical location?
4. Adverse possession.
5. Denial of motion for new trial.

### RECORD

Plaintiffs own Lot 17 and defendants own Lot 16 on Corinthian Island in Belvedere. The first cause of action in plaintiffs' complaint is based upon alleged agreed boundary line by the predecessors of the parties. The second cause of action alleges adverse possession by plaintiffs and their pred-

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

ecessors of the area in question. The third cause of action incorporates the two first causes of action and alleges intention of defendants to build a carport upon the northeast corner of plaintiffs' property. The fourth cause of action alleges the establishment of a common boundary line by plaintiffs' and defendants' predecessors in interest. The court found in pertinent part that there was never any uncertainty in the minds of the predecessors of the parties as to the location of the boundary line, no agreement to fix such line, and no adverse possession of either lot by the other of the parties except that plaintiffs' residence encroaches slightly at two points on defendants' Lot 16, that plaintiffs' residence encroachment was done in good faith and is but a few inches, does not interfere with defendants' quiet and peaceful enjoyment of Lot 16, occasions no damage or detriment to plaintiffs, that the common boundary line is as located in 1957 by John C. Oglesby Engineering Company and described in the findings, and that it would be inequitable to remove the encroachment. Judgment was entered accordingly.

## THE EVIDENCE

Both Lots 16 and 17 are irregularly shaped, narrow, hillside lots that front on Bellevue Avenue and slope steeply toward the water of the Bay. The subdivision map and deed indicate that Lot 17 has a frontage of 49 feet on the road and approximately 50 feet at an angle on the water; Lot 16, a 61-foot frontage on the road and 64 feet on the water. The line here in dispute is the approximately 106-foot-long lateral constituting the eastern boundary of Lot 16 and the northwestern boundary of Lot 17.

Both lots were originally owned by Mr. and Mrs. Frederick Kelley. Mr. Kelley was the secretary for the Corinthian Island Company, the original subdivider. On August 11, 1933, the Kelleys conveyed all of Lot 17, except a 10- by 20-foot rectangle in the northwest corner, adjacent to Lot 16, to the Northern Counties Title Insurance Company. The title company held title for the benefit of Vincent Clark and Katherine Clark, his wife, under a holding agreement with them.

In 1937, the Kelleys conveyed to the Clarks the 10- by 20-foot parcel previously excepted. In 1939, the title company conveyed to the Clarks the rest of Lot 17 which the company had acquired in 1933 from the Kelleys. In 1961, Mrs. Clark conveyed a portion of Lot 17 to plaintiffs. After the death of her husband, Mrs. Kelley in 1946 conveyed Lot 16 to William

A. and Irene Barbe Smith. In May 1962 the Smiths conveyed Lot 16 to defendants.

In 1934, when the Clarks began to build the home now occupied by plaintiffs, the Kelley house was already built with a concrete stairway on the southeast side of the house leading from the road to a concrete walkway that led to the Kelley dock. The Clark house with its 45-foot 6-inch width was a very tight fit on the 48-foot 4-inch width of the portion of Lot 17 on which the house was built. In 1935, the Clarks built several horizontal retaining walls running perpendicular to the common boundary between Lots 16 and 17: several above the house, between the house and the road, and one long high wall below the house near the water. The area between the retaining walls above the house was filled and terraced to create a level planting area.

By agreement with the Kelleys, the horizontal retaining walls were allowed to extend past the common lateral boundary, and connected to the stairway on the side of the Kelley house, in order to avoid the construction of a wall up and down the slope. This was to anchor the ends of the retaining walls and to give the Kelleys some level places to garden in the terraced area between the retaining walls. There was never any discussion between the Kelleys and the Clarks about the boundary. From then on, the occupants of both lots gardened in the terraced area.

When the Smiths bought Lot 16 from Mrs. Kelley in 1946, nothing was said about the boundary and no survey was made. Because of the planting, there was no real separation of the properties, but the Smiths and Clarks knew that the boundary was in the terraced area. Although both parties gardened back and forth across the boundary line (there was no visible line), they generally confined most of their gardening to their own side of that line. After moving in the house in 1954, Mrs. Smith found the house plans. Mrs. Smith and her tenants used the stairs and concrete walkway to the dock.

After a preliminary survey in 1956 indicated some discrepancies in the location of the lateral boundary between the two lots, Mrs. Smith obtained the 1957 survey which indicated that: two corners of the Clark house on Lot 17 were on Lot 16; that a part of the concrete walkway to the Smith dock was on Lot 17; and that a part of the terraced garden area above the Clark house was on Lot 16. It is the line located by this 1957 survey which the court found to be the correct boundary line.

When plaintiffs bought Lot 17 from the Clarks in 1961 for $72,500, they relied on their deed and were not concerned about the location of the boundary so there was no discussion and no survey. Plaintiffs had lived in the neighborhood, knew both the Clarks and the Smiths, were familiar with the various properties and in 1960, as prospective purchasers, had viewed the Smith house on Lot 16.

Plaintiffs moved into the Clark house in March 1961. There was no discussion about the common boundary until June 1961, when plaintiffs protested the removal of a bush by Mrs. Smith's gardener in the terraced area. Mrs. Smith indicated that the bush was on her property and showed them the maps of the 1957 survey. Before selling her property to defendants, Mrs. Smith had informed them of the 1957 survey.

Plaintiffs and defendants first met in April 1962 after the defendants purchased the Smith house on Lot 16. The parties had several discussions concerning the construction of a mutual carport partially in the area here in dispute, but were never able to reach an agreement. Subsequently, defendants decided to build their own carport on the basis of the boundary shown by the 1957 survey and obtained a building permit. Defendants discovered that plaintiffs did not accept the boundary established by the 1957 survey when plaintiffs prevented the defendants' contractor from placing stakes for the construction of the carport shortly before this action was filed.

Plaintiffs contend that the court erred in quieting the respondents' title to the triangular piece of land in the terraced garden area along the lines of the 1957 survey as they claim that the boundary along the outer edge of the concrete stairway alongside the Kelley house was previously established by agreement, practical location or adverse possession. As all of plaintiff's arguments are based on the alleged insufficiency of the evidence to support the judgment, our only function is to determine whether there is substantial evidence in the record to support the judgment.

### 1. Was there an agreed boundary?

The first question presented is whether the record supports the finding that there was no agreed boundary. ■ The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. It is necessary to show that there was an uncertainty as to the true boundary line, an agreement, express or implied, between the conterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the stat-

ute of limitations or under such circumstances that substantial loss would be caused by a change of its position (*Ernie* v. *Trinity Lutheran Church* (1959) 51 Cal.2d 702, 707 [336 P.2d 525]; *French* v. *Brinkman* (1963) 60 Cal.2d 547, 551 [35 Cal.Rptr. 289, 387 P.2d 1]; *Mello* v. *Weaver* (1950) 36 Cal.2d 456, 459-460 [224 P.2d 691]; *Fobbs* v. *Smith* (1962) 202 Cal. App.2d 209, 214 [20 Cal.Rptr. 545]). ▉ "It is not required that the true location be absolutely unascertainable [citation]; that an accurate survey from the calls in the deed is possible [*sic*] [citation], or that the uncertainty should appear from the deeds [citation]. The line may be founded on a mistake. [Citation.]" (*Ernie* v. *Trinity Lutheran Church, supra,* at pp. 707-708; *Janes* v. *LeDeit* (1964) 228 Cal.App.2d 474, 481 [39 Cal.Rptr. 559].)

▉ The object of the rule confirming occupation according to an agreed line ". . . is to secure repose, to prevent strife and disputes concerning boundaries, and make titles permanent and stable"; and the rule not only binds the parties, but also their successors by subsequent conveyances. (*Young* v. *Blakeman* (1908) 153 Cal. 477, 482 [95 P. 888]; *Martin* v. *Lopes* (1946) 28 Cal.2d 618, 623 [170 P.2d 881].) ▉ It is also established by the authorities that the line so agreed upon becomes in legal effect the true line; that the agreement as to the line may be in parol; that it does not operate to convey title to the land which may lie between the agreed line and the true line, but fixes the line itself and the description carries title up to the agreed line regardless of its accuracy; that the division line thus established attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed; and that if more is thus given to one than the calls of his deed actually require, he holds the excess by the same tenure that he holds the main body of his lands. (*Young* v. *Blakeman, supra,* at p. 482; *Martin* v. *Lopes, supra,* at pp. 623-624; *Ernie* v. *Trinity Lutheran Church, supra,* at pp. 708-709.) In *Clapp* v. *Churchill* (1913) 164 Cal. 741, 745 [130 P. 1061], the rationale underlying this doctrine is stated thusly: "[T]he doctrine of an agreed boundary line and its binding effects upon the conterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties. Acquiescence is merely evidence of the agreement and can

properly be considered as evidence of an agreement only when a formal agreement would itself have made a binding contract.''

We now turn to the instant case in the light of the foregoing principles. Our first inquiry is whether there is evidence in the record sustaining an inference that there was uncertainty as to the true boundary line between Lots 16 and 17. The word ''uncertainty'' is used in the statements of the rule in the decisions to convey the idea that at the time of the location of the division line neither of the conterminous owners knew the true position of the line on the ground (*Nusbickel* v. *Stevens Ranch Co.* (1921) 187 Cal. 15, 19 [200 P. 651]). To invoke the doctrine of agreed boundary, it need only be shown that the uncertainty present at the time of the agreement is a lack of knowledge by both parties of where the true line is or should be drawn (*Martin* v. *Lopes, supra,* at p. 626).

There is nothing in the record to indicate that there was any such lack of knowledge or uncertainty. Rather, all of the evidence indicates that the Kelleys and the Clarks knew exactly where the boundary was but permitted the retaining walls to extend over it in order to avoid the construction of another lateral wall to anchor the ends of the retaining walls and to provide Mrs. Kelley with a strip of level planting area. Mrs. Kelley planted geraniums close to the steps and the Clarks also planted in the area.

Mrs. Smith, defendants' predecessor in title who lived next to the Clarks from 1946 to 1961, testified that she had never discussed the matter of the boundary with her grantor, Mrs. Kelley, nor with the Clarks during the entire 15-year period. Like the Kelleys and the Clarks, the Smiths and the Clarks both gardened and maintained the terraced area. Mr. Clark showed the boundary in the terraced area to the gardener and the Smiths, like the Kelleys, had plants close to the steps.

As before stated, the doctrine of an agreed boundary line rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line (*Clapp* v. *Churchill, supra*). Thus, the doctrine is applicable only where the true line is otherwise unknown or uncertain. There is no occasion for asserting that a boundary has been established by agreement unless the description in the conveyance in reality designates a different boundary. The boundary is considered definite and certain when by survey it can be made certain from the deed

(*Meacci* v. *Kochergen* (1956) 141 Cal.App.2d 207, 212 [296 P.2d 573]; *Williams* v. *Barnett* (1955) 135 Cal.App.2d 607, 612 [287 P.2d 789]).

 The evidence must disclose a valid preexisting agreement and to be valid that agreement must have been based on a doubtful boundary line. But the inference of a doubtful boundary cannot prevail where, as here, there was no question or doubt between both parties over the boundary (*Clapp* v. *Churchill, supra*). Plaintiffs here were bound to accept the 1957 survey line which was in existence when they bought the property (*Link* v. *Cole Investment Co.* (1962) 199 Cal.App.2d 180, 188 [18 Cal.Rptr. 441]).

Having concluded that there was no evidence of uncertainty, we can briefly dispose of plaintiffs' contention that there was evidence of an agreement fixing the boundary. Plaintiffs argue that the 1937 conveyance of the northwest corner of Lot 17, excepted from the 1933 conveyance, was meant to confirm the new boundary which they claim was established after the construction of the retaining walls in 1936. At the time of the trial, the only survivor of the original four parties was Mrs. Clark. Whatever the reasons were for the delay in conveying the corner originally withheld from the deed from the Kelleys to the Clarks, it was not disclosed in any of the relevant documents introduced at the trial nor brought out in the testimony of the various witnesses. Moreover, there is nothing in the deed of this corner establishing a boundary line to the whole lot, nor in any way affecting the question here. The evidence amply supports the finding that the 1936 agreement concerning the extension of the retaining walls was made for convenience without any intention to change boundaries (see *Chandler* v. *Hibberd* (1958) 165 Cal.App.2d 39 [332 P.2d 133], where the court held that the only agreement was for the erection of a fence for convenience as a cattle barrier, and not for a boundary line).

*2. The Waite Survey.*

On July 26, 1933, while the Kelleys still owned both lots, Surveyor Waite made a survey of Lot 17. It was made at the request of one Allensby who was acting for the Clarks who were about to buy said lot. The map of this survey shows two stakes on the line between Lots 17 and 18 and four stakes and bearings on a line on the interior of Lot 17. There are no stakes or bearings shown on the line between Lots 16 and 17 (the line in dispute). Surveyor Oglesby testified that from the map Lot 17 could not be located on the ground. There

seems to be an 11 degree error in the location of the boundaries on the map. Plaintiffs contend that the parties adhered to the boundary line appearing on the Waite map and that an agreement to regard it as the boundary can be implied from this fact. While there is no requirement that the boundary line must be physically marked on the ground but merely that the parties have agreed upon a dividing line that is clear to them and that can be made clear to others (*Rose* v. *Silva* (1961) 189 Cal.App.2d 760, 767 [11 Cal.Rptr. 492]; *Carr* v. *Schomberg* (1951) 104 Cal.App.2d 850, 859 [232 P.2d 597]), there is no evidence in our case of any clear dividing line to which the parties agreed. A requisite to make applicable the doctrine of agreed boundaries is that the line acquiesced in by adjoining property owners must be specific, definite and certain. The agreement is not controlling if that line is left indefinite, uncertain or speculative (*Garrett* v. *Cook* (1948) 89 Cal.App.2d 98, 103 [200 P.2d 21]). Here, the line alleged by plaintiffs' complaint is along the outer edge of the concrete stairway at the side of defendants' house. The line asserted on appeal is admittedly in a slightly different location. This line is either 15-18 inches from the stairway or some distance from the stairway. Thus, under plaintiffs' own theory, the line supposed to have been agreed upon, is indefinite and uncertain.

### 3. No boundary by practical location.

The next question presented is whether the evidence supports the finding that no boundary had been established by practical location. The doctrine of practical location applies where the owner of a larger tract conveys a parcel thereof that he has delineated on the ground by fixed monuments, and the parties rely on such monuments as establishing the intended boundaries. In such event, the latter will prevail over any differing description in the deed (*French* v. *Brinkman* (1963) 60 Cal.2d 547, 551 [35 Cal.Rptr. 289, 387 P.2d 1]; 11 Stan. L.Rev. 720, 733). In the instant case, there is no satisfactory evidence that any survey was ever staked on the ground and then agreed to by the parties. The surveyor called by defendants testified that the Waite survey could not be located on the ground as a number of its essential terms were missing. The conflict on this subject created by the testimony of plaintiffs' witness was resolved by the court in favor of defendants.

The various authorities cited by plaintiffs are not in point. In *French* v. *Brinkman, supra,* the plaintiffs, who relied on an

agreed boundary, had built a bathhouse with one wall on what they thought was the common boundary between a lot and an adjoining lot which they also owned. They then sold the adjoining lot to the defendants who for some time acquiesced in the boundary as located along the wall of the bathhouse. The plaintiffs paid the taxes on the wall, the defendants declining to do so. After a dispute arose, the defendants took out the wall and kept the materials. The Supreme Court held that the plaintiffs were entitled to have their title to the wall area quieted under both of two theories, one, practical location and two, agreed boundary because of boundary lines fixed by acquiescence and acceptance under such circumstances that substantial loss would be caused by a change of the position of the wall. ▇▇ In the case at bench, the evidence would not support either theory. The court found that the evidence supports the finding that the slight encroachment of plaintiffs' residence of a few inches in two different places does not interfere with defendants' quiet and peaceful enjoyment of Lot 16, nor causes any detriment to defendants or to their property.

In *Arnold* v. *Hanson* (1949) 91 Cal.App.2d 15 [204 P.2d 97], the court held that the original survey as then staked on the ground prevailed over the map description. In that case, moreover, the plaintiffs had built a fence and a stone wall along the common boundary as staked on the ground before the defendants bought their lot. *Nebel* v. *Guyer* (1950) 99 Cal.App.2d 30 [221 P.2d 337], also cited by plaintiffs, was decided on the principle that a mandatory injunction will not lie to remove a slight encroachment where no damage is shown.

*4. Adverse possession.*

Plaintiffs contended that the finding that plaintiffs failed to establish the claimed boundary line by adverse possession is not supported by the evidence. ▇▇ To establish title by adverse possession, a claimant must not only show that such possession was open, notorious, hostile, exclusive, continuous and uninterrupted but also must show the payment of taxes (Code Civ. Proc., § 325.) ▇▇ It is the further rule that such possession cannot be made out by inference, but only by clear and positive proof. ▇▇ The burden of proving all of the essential elements is on the claimant, and if one element is wanting, the claim must fall (*Clark* v. *Stotts* (1954) 127 Cal.App.2d 589, 592 [274 P.2d 172]).

▇▇ Here, the evidence indicated friendly mutual use of the disputed area by the various owners. There was no evidence of hostile use by plaintiffs or their predecessors. It

necessarily follows that plaintiffs did not sustain the burden cast on them. Thus, the question of whether or not plaintiffs had met the other requirement, payment of taxes, becomes irrelevant.

The Waite survey in 1933 was placed in the title company escrow in connection with the sale of a portion of Lot 17 to the title company to hold for the Clarks. The survey is kept by that company as a permanent record. It is plaintiffs' theory that Waite placed hubs on the ground to indicate the line between Lots 16 and 17 and that the Kelleys and the Clarks and their successors treated this line as the boundary line between their respective lots. However, the Waite survey shows no hubs or stakes on that line although it shows stakes on a line in the interior of Lot 17. There is no evidence that any of the parties, prior to the Oglesby survey of 1957, were uncertain about the location of the common boundary line or considered the line to be where plaintiffs claim the Waite survey erroneously showed it to be. Plaintiffs contend that the rule of *Beall* v. *Weir* (1909) 11 Cal.App. 364 [105 P. 133], applies here. That rule is "When land has once been conveyed with reference to stakes and monuments which were fixed and in place at the time of such conveyance the conveyance cannot be afterward defeated by a new survey which shows that the stakes and monuments as originally set were not as a matter of fact in their true places" (368). *Link* v. *Cole Investment Co.* (1962) 199 Cal.App.2d 180, 186 [18 Cal. Rptr. 441], is to the same effect.

In each of the cited cases, the question involved was the location of the boundary line according to the calls in the respective deeds. In our case, the deeds do not contain calls. The descriptions refer merely to the lots. Moreover, there is no evidence that the parties acted according to the Waite survey, assuming that Waite located on the ground the boundary line between the two lots. As stated, the Waite map shows no stakes along this line, although it shows stakes on other lines. Plaintiffs contend that because Mrs. Clark, who testified that there was no agreement made with the Kelleys as to boundary because there was no uncertainty between them on the subject, also testified that the arrangements for the purchase were made by her husband, her testimony is entitled to little weight. ▇▇▇ Assuming this to be true, it makes no difference in the outcome of the case. The burden was on plaintiffs to prove the agreement and not on defendants to prove that there was no such agreement. Until plaintiffs

proved sufficient facts necessary to establish the elements of an agreed boundary line, defendants were under no burden to prove the negative. Plaintiffs failed to prove such facts here.

In a quiet title action, the plaintiff may recover only on the strength of his own title and not upon the weakness of the defendant's title (*Helvey* v. *Sax* (1951) 38 Cal.2d 21, 23 [237 P.2d 269]). There is no evidence that any of the parties were uncertain as to the location of the boundary line. At most, under plaintiffs' theory of the case, the evidence showed that the parties acquiesced in the erroneous Waite location of the boundary line. Under such situation, the rule of *Meacci* v. *Kochergen* (1956) 141 Cal. App.2d 207 [296 P.2d 573], would apply. " 'Inasmuch as the boundary was properly described in the deeds of both parties, there had been no dispute as to the boundary prior to the survey. There had been only a mistaken acquiescence in what was believed to be the true boundary. In such situation, appellant asserting the south side of the wall to be the south boundary of Lot 38 and respondents' acquiescing in such assertion, such acquiescence by respondents in a wrong boundary is considered in both law and equity as a mistake and either party is free to claim the true line. [Citations.]' " (P. 212.) See also *Williams* v. *Barnett* (1955) 135 Cal.App.2d 607 at p. 612 [287 P.2d 789] : "Where there is an acquiescence in a wrong boundary, when the true boundary may be ascertained by the deed, it is treated both in law and equity as a mistake, and neither party is estopped from claiming to the true line. The boundary is considered definite and certain when by survey it can be made certain from the deed. (*Janke* v. *McMahon, supra,* 21 Cal. App. 781, 788 [133 P. 21].) "

*5. Motion for new trial properly denied.*

Plaintiffs moved for a new trial on three grounds. 1. Newly discovered evidence, 2. Insufficiency of evidence, and 3. The decision and judgment are against law. As we have hereinbefore shown, the evidence was amply sufficient to support the judgment, and plaintiffs have failed to point out wherein the decision and judgment are against law. Thus alleged grounds 2 and 3 are unfounded. As to ground 1, newly discovered evidence, plaintiffs, on the hearing of the motion, filed declarations of certain Marin County officials which apparently prove that the retaining walls built in 1935 in the terraced gardens

were assessed to the owners of Lot 17 and not to those of Lot 16. This fact would not justify the granting of a new trial. ▮▮ Payment of taxes alone would not support a conclusion of adverse possession. It is only one of the required elements. Here none of the other required elements were proved.

Judgment affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied April 8, 1965, and appellants' petition for a hearing by the Supreme Court was denied May 5, 1965.