Filed 3/26/15  Michaelson v. V.P. Condominium CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAREN MICHAELSON, as Trustee, etc., | D065602 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00085938-CU-OR-CTL) |
| V.P. CONDOMINIUM CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Reversed and remanded with directions.

Rupp, Johnston & Lloyd and Andrew F. Lloyd, Katherine Dwyer for Plaintiff and Appellant.

Joseph J. Barr, Jr. & Associates and Joseph J. Barr, Gary L. Ritchie for Defendants and Respondents.

Nicholas Mosley[1] appeals a judgment entered after the trial court granted a motion for summary judgment in favor of respondents V.P. Condominium Corporation ("V.P. Condo") and Daniel G. Little, individually and doing business as Little & Sons Property Management, on Mosley's complaint alleging causes of action for quiet title, slander of title, trespass, breach of a declaration of covenants, conditions and restrictions (CC&R's), breach of fiduciary duties, defamation, elder abuse, intentional interference with economic advantage, and negligence.

Mosley contends the court erred by granting the motion because triable issues of fact existed regarding his right to exclusively use an unassigned parking garage space ("unassigned garage") at his residence at the Villa Park condominiums (Villa Park). He further contends the court erred by denying him leave to amend his complaint. Because Mosley submitted a declaration setting forth facts that appear sufficient to give rise to a cause of action for adverse possession, we conclude the court abused its discretion in not granting leave to amend. Accordingly, we reverse the judgment and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2012, Mosley filed a verified complaint alleging the above-referenced nine causes of action. Mosley attached to his complaint copies of the following documents: Villa Park's CC&R's recorded in December 1980; grant deeds

---

[1] This court granted Karen Michaelson, Mosley's successor in interest, leave to pursue this appeal following Mosley's death. Nonetheless, throughout this opinion we will refer to Mosley instead of Michaelson to avoid confusion.

recorded in 1981 documenting that the Villa Park developer, called Thirty Third Street Associates Partnership, had conveyed to Guy Trenga a condominium unit referred to as unit 5, and exclusive right to use Garage No. G-5 and the unassigned garage, which was identified by reference to the condominium plan. Guy Trenga, in turn, conveyed the property to Guy and Vonda Trenga, who in turn conveyed it to Mosley in 1987. Mosley also submitted a quitclaim deed recorded in June 2000 transferring Mosley's interest in unit 5 and the unassigned garage to the Andrew Mosley Living Trust, UTD.

Respondents filed a verified answer generally and specifically denying the allegations in Mosley's complaint.

Respondents moved for summary judgment or alternatively summary adjudication, claiming that no material issues of fact existed regarding whether Mosley had a right to exclusive use of the unassigned garage, and that respondents were entitled to judgment as a matter of law. Respondents argued: "The common element in each of [Mosley's] causes of action is [his] allegation that as the owner of unit 5 at VP Condo, in addition to Garage 5 (G-5) and balcony 5 (B-5) he owns a right to make exclusive use of the garage identified on the condominium plan as 'unassigned garage.' " (Some capitalization omitted.) Respondents specifically claimed Mosley no longer owned unit 5, having quitclaimed it to the trust; the disputed garage space is unassigned in the Villa Park condominium plans and the CC&R's; V.P. Condo never licensed, sold, conveyed or approved of anyone having exclusive use of the unassigned garage; and Mosley's grant

3

deed is a "wild deed" because the two first deeds conveying unit 5 did not include an interest in exclusive use of the unassigned garage.[2]

Respondents noted in their moving papers that no later than July 23, 1981, when the developer conveyed unit 5 to the first purchasers, Daniel Appel and Marlene Appel, the grant deed did not convey use of the unassigned garage, but only the G-5 parking spot, which was not at issue. Specifically, the first grant deed stated that under the condominium plan, unit 5's owner had "exclusive right to use Garage No. G-5, patio No. P-, Balcony No. B-5, storage No. 5-, and Parking No. P5." On July 27, 1981, the Appels conveyed unit 5 back to the developer, and that second grant deed stated the same language as the first grant deed regarding parking.

It was not until the third conveyance of unit 5 from the developer to Guy Trenga in August 1981 that someone added the following sentence to the above stated language in the grant deed: "Also the exclusive right to use the unassigned garage (located at the northwest corner of the north building—see condominium plan)."[3] All subsequent grant

---

[2] A "wild" document is one recorded outside the chain of title. (*Bothin v. The California Title Ins. Co.* (1908) 153 Cal. 718, 723; see also *Duncan v. Ledig* (1949) 90 Cal.App.2d 7, 12; *Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67, 73.)

[3] Thus Mosley's grant deed states in its entirety that it grants the owner of unit 5 "the exclusive right to use garage No. G-5, patio No. P- , balcony No. B-5, and storage No. S- , appurtenant to parcel 2 as set forth on that certain condominium plan referred to in parcel 1 above. Also the exclusive right to use the unassigned garage (located at the northwest corner of the north building-see condominium plan)." (Some capitalization omitted.)

4

deeds conveying unit 5, including Mosley's grant deed, have retained this additional language.

Respondents attached to their motion a declaration by Daniel Little, who supervised the V.P. Condo account at Little & Sons Property Management. He stated that the V.P. Condo board of directors held its first meeting in July 1980, and under the CC&R's, recorded in December 1980, the board could give a unit owner a revocable license to make exclusive use of a portion of the common area, and the license would be revoked upon transfer; alternatively, 75 percent of the first mortgagees could authorize the board to convey to an individual exclusive right to use the unassigned garage. But Little stated he was not aware that V.P. Condo had given Mosley or anyone else exclusive right to use the unassigned garage for personal use. Little acknowledged that as a V.P. Condo onsite manager, Mosley was permitted to use the unassigned garage, but claimed Mosley never acquired title to it. According to Little, when V.P. Condo found out Mosley had claimed an exclusive right to use the unassigned garage, it requested he cease doing so and notified the escrow company that Mosley did not own the unassigned garage. Little attached to his declaration various documents including copies of grant deeds of unit 5 from 1980 to 2000, minutes of the V.P. Condo board of directors' first meeting, the condominium plan, and the amended condominium plan.

Elvia Saucedo, an original purchaser of a V.P. Condo unit and a current board member, also submitted a declaration that was in accord with Little's declaration.

5

Respondents pointed out that in December 1980, the CC&R's, the certificate of consent and the first condominium plan were recorded. This condominium plan did not mention the unassigned garage.

Section D of the CC&R's[4] states: "The owners of a condominium in the project will receive title to a living unit plus an appurtenant undivided 1/11th fractional interest as tenant in common in the common area." Article I, section 8 of the CC&R's defines "common areas" as "all portions of the condominium property not located within a living unit." Article I section 9 of the CC&R's defines "exclusive use areas" as "those portions of the common area to which an exclusive right to use is granted to an owner as shown and described on the condominium plan and shall consist of patios, balconies, garages and storage and parking spaces."

Article IV, section 12 of the CC&R's states: "The Board shall have the right to allow one or more owners to exclusively use portions of the otherwise nonexclusive common area, provided that such portions of the common area are nominal in area and adjacent to the owner's exclusive use area(s) or living unit, and, provided further, that such use does not unreasonably interfere with any other owner's use or enjoyment of the project."

Article IV, section 15 of the CC&R's states: "Each exclusive use area shall be (i) appurtenant to the living unit with which the exclusive use area is conveyed . . . conveyance of a condominium shall effect conveyance of the exclusive use areas

---

4      Some capitalization is omitted in quotes from the CC&R's.

6

appurtenant thereto and transfer of all rights thereto to the vested owner of the condominium. Any license(s) thereto shall be terminated upon such conveyance. No exclusive use area or any rights thereto (other than said revokable [*sic*] license) shall be transferred or conveyed apart from conveyance of the condominium to which they are appurtenant. Each exclusive use area shall be deemed to be common area for all those purposes set forth in this declaration which are not inconsistent with this Article IV or Article V."

Article VIII of the CC&R's states a requirement that the condominium owners approve any sale, encumbrance or transfer of a common area: "Except as otherwise provided in Article VI above, unless at least seventy-five percent . . . of the first mortgagees of mortgagees encumbering condominiums (based on one (1) vote for each mortgage) have given their prior written approval, neither the owners nor the corporation shall . . . (iv) seek, by act or omission, to abandon, partition, subdivide, encumber, sell or transfer the Common Area."

In April 1981, the certificate of consent for the amended condominium plan was recorded. This plan shows unit 5 was assigned only one garage space, identified as "G-5." The plan describes the disputed garage as "unassigned."

Mosley opposed the summary judgment motion, contending that his deed granted him the right to exclusive use of the unassigned garage and neither the V.P. Condo board of directors nor any condo owner had previously contended otherwise. Mosley stated in a declaration: "I received a title report at the time I purchased the condominium from the Trengas. It stated they were the owners of the condominium they deeded to me."

7

Mosley added: "I moved into my condominium at Villa Park in 1987. I lived there continuously until I moved out of it and into a rented room at an elder care facility in late 2011. During that time period I performed all maintenance, repair, and renovation of the garage. I insured and paid taxes on the garage. I used the garage deeded to me for my exclusive use the entire time I resided at Villa Park. [¶] . . . During the time I lived at Villa Park, there was never any contention by the [homeowners'] association, or any of the other owners, that I was not entitled to exclusive use of the garage. Owners routinely referred to it as 'Nick's garage.' [¶] . . . From 1997-1995 or 1996 there was no onsite manager of the VP Condominium Complex. Each resident took turns fulfilling the duties of an onsite manager . . . Sometime between 1995 and 1996, I began functioning as onsite manager. The use of the garage had no relationship with my role as onsite manager. I had exclusive use of the garage before assuming the role and continued to have exclusive use of it after I was no longer the onsite manager." (Some capitalization omitted.)

According to Mosley, when the condominium plan was recorded in 1980, it "contained 11 living spaces and 11 garages. The area that would become the extra garage is not enclosed or included as part of the building complex. Therefore it is a red herring to point to the CC&R's as evidence that each unit owner owns an 'undivided 1/11th fractional interest' in the subject garage." (Some capitalization and citations omitted.)

Mosley disputed that his deed was a wild deed: "The property in question was initially deeded by the developer to a relative on June 2, 1981. That relative deeded the property back to the developer on July 23, 1981, the same date the deed for the initial sale was recorded. Less than two weeks later, the developer sold the property to Guy Douglas

8

Trenga. At this time, the developer, and not some unknown entity, attached the subject garage to unit 5 in the grant deed. This deed was recorded by the county recorder with the description of the property which included the garage." (Some capitalization and citations omitted.)

At the hearing on respondents' motion, Mosley's counsel requested leave to amend the complaint to add a cause of action for adverse possession: "At the very least, your honor, given the fact that [Mosley] has owned the exclusive use of [the unassigned garage] and made use of [it] for 24 years, has been paying taxes on it, performing maintenance on it . . . we would at least ask leave to amend to include an adverse possession claim."

The trial court granted the summary judgment motion without leave to amend, ruling: "Prior to [Mosley's] predecessor's deed, there were two previous deeds which did not contain rights to use the unassigned garage. The condominium plan, amended plan and the CCR's, recorded prior to [Mosley's] predecessor's purchase, provide that the only garage assigned to unit 5 is G-5. Thus the unassigned garage is part of the common area. As there is no evidence presented to show that the entity that granted [Mosley's] predecessor rights in the unassigned garage had the right to convey the unassigned garage, the conveyances including the unassigned garage are 'wild deeds' and ineffective." (Some capitalization omitted.) Judgment was entered in accordance with the court's ruling.

The court denied Mosley's new trial motion brought under Code of Civil Procedure section 657.

9

DISCUSSION

I. *Applicable Law*

A long line of California Supreme Court cases, starting at least as far back as *Kelley v. Kriess* (1885) 68 Cal. 210, stand for the following principle regarding permissible amendments to pleadings: "If plaintiff has a good cause of action, which by accident or mistake he has failed to set out in his complaint, the court, on motion for judgment on the pleadings, should, on his application so to do, permit him to amend." (*Id.* at p. 212.)

As a general rule, the pleadings delimit the issues to be considered on a motion for summary judgment or summary adjudication, and new, unpleaded issues cannot be raised for the first time in opposition to the motion. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.) However, "[u]pon a motion for summary judgment, amendments to the pleadings are readily allowed. [Citation.] If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself." (*Id.* at p. 1258.)

"In practice, where a defect appears on the face of the complaint, a trial court may elect to treat the hearing of the summary judgment motion as a motion for judgment on the pleadings and grant the opposing party an opportunity to file an amended complaint to correct the defect." (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 625; accord, *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1067, 1069 ["When considering challenges to the sufficiency of a pleading, the rule is that if it

10

is reasonably possible that a defect in a complaint can be cured by an amendment, the trial court abuses its discretion by dismissing the action."].)

"The elements necessary to establish title by adverse possession are: (1) tax payments, (2) actual possession which is (3) open and notorious, (4) continuous and uninterrupted for five years, (5) hostile and adverse to the true owner's title, and (6) under either color of title or claim of right. The party asserting title by adverse possession has the burden of proving affirmatively each one of these elements." (*California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1803.) A complaint seeking to quiet title based on adverse possession "shall allege the specific facts constituting the adverse possession." (Code Civ. Proc., § 761.020, subd. (b).) "[S]uch possession cannot be made out by inference, but only by clear and positive proof." (*Kraus v. Griswold* (1965) 232 Cal.App.2d 698, 709.)

In *Estate of Williams* (1977) 73 Cal.App.3d 141, 147, the court addressed color of title as follows: "The element of 'color of title,' as a part of proving adverse possession, has been described as 'founded on a *written instrument*, *judgment or decree*, purporting to convey the land, but for some reason defective. The possessor has what appears to be title, and, if he is in good faith, is protected. This is so even though the instrument is *void* on its face. [Citations.] [¶] Color of title is received in evidence for the purpose of showing that the title is adverse and it therefore dispenses with other proof of *hostile* or adverse claim.' [Citation.] [¶] The good faith of the occupant, in relying on a defective instrument, is a crucial element to establishing adverse possession based upon color of title."

11

## II. *Analysis*

On appeal, the parties agree that all of Mosley's causes of action depend on whether he had obtained exclusive right to use the unassigned garage. Accordingly, our analysis of this issue applies to all of Mosley's causes of action.

The trial court had in front of it sufficient documentation to establish Mosley likely could state a cause of action for adverse possession. Specifically, Mosley's evidence in opposition to the summary judgment motion demonstrated that he received a grant deed that conveyed to him the right to exclusive use of the unassigned garage; he had continuously and uninterruptedly used the garage exclusively for more than five years; and he paid insurance and taxes on the garage. Even if Mosley's deed was a wild deed—a point we have no occasion to decide—Mosley could still rely on the color of title doctrine to support his adverse possession claim. These material facts preclude summary judgment on Mosley's complaint that alleged he had the right to exclusive use of the unassigned garage.

Respondents argue the trial court properly denied Mosley leave to amend his complaint because it was untimely made at the hearing on the summary judgment motion. But under *Laabs v. City of Victorville, supra,* 163 Cal.App.4th 1242, Mosley's motion was timely; therefore, the court abused its discretion by denying Mosley's motion to amend his complaint.

## DISPOSITION

The summary judgment is reversed and on remand the superior court is directed to allow Nicholas Mosley an opportunity to amend his complaint to state a cause of action for adverse possession. Appellant, Karen Michaelson, as trustee of the Nicholas A. Mosely Living Trust, is awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

13